UNITED STATES, Appellee

v.

FREDERICK M. HEMP, Private, U. S. Air Force, Appellant

1 USCMA 280, 3 CMR 14

No. 290

Decided April 8, 1952.

COL. Kenneth B. Chase, USAF, and CAPT. Dwight L. Carhart, USAF, for Appellant.

COL. Wendell C. Dreier, USAF, and CAPT. William E. Shannon, USAF, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The record of trial in this case reveals that the accused was tried at Westover Air Force Base, Massachusetts, for a violation of the 58th Article of War, 10 USC § 1530, under a charge and specification alleging that while enroute from that base to McAndrew Air Force Base, Newfoundland, he deserted the service of the United States and remained in desertion until he was apprehended at Springfield, Massachusetts.

The accused pleaded not guilty to the charge and specification, but was found guilty of both. He was sentenced to be dishonorably discharged, to forfeit all pay and allowances to become due after the date of the order directing the execution of the sentence, and to be confined at hard labor for one year. The convening authority thereafter approved the finding and sentence, and the same were affirmed by the board of review.

The specification under which the accused was tried alleged  the crime charged in the following language:

"In that [accused] did, while enroute from Westover Air Force Base, Massachusetts, to McAndrew Air Force Base, Newfoundland, on or about 19 October 1950, desert the service of the United States, and did remain absent in desertion until he was apprehended at Springfield, Massachusetts, on or about 2 June 1951."

The law officer, in charging the court, gave the elements of proof to be as follows:

"Proof: (a) that the accused absented himself without leave from his place of service, organization, or place of duty, as alleged; (b) that he intended, at the time of absenting himself, or at some time during his

absence, to remain away permanently from such place, or to avoid hazardous duty, or to shirk important service, as alleged; (c) that his absence was of duration and was terminated as alleged; and (d) that the desertion was committed under the circumstances alleged, such as in the execution of a certain conspiracy or in time of war."

We granted a review, limiting the issues to whether the instructions of the law officer as to the elements of the offense were erroneous and prejudicial to the substantial rights of the accused.

Before addressing ourselves to the particular problem involved, we deem it advisable to set forth with a little more particularity our views regarding instructions on the three offenses of desertion. The confusion and uncertainty which we find evidenced in some of the cases appealed to this Court on this subject are understandable, and arise out of the changes in procedure required under the Uniform Code of Military Justice, 50 USC §§ 551–736. Difficulties can be expected when the offense was committed at a time when the old code was in effect, and yet must be tried under the new rules. The 1949 Manual for Courts-Martial, U. S. Air Force, was prepared at a time when it was not contemplated that law officers would be required to instruct the members of the courts-martial as to the elements of the offense, and it is not a model for that purpose. It is to be hoped that when the old enactment and Manual are out of use, the Code and present Manual, and the principles enunciated by this Court, will eliminate much of the uncertainty being encountered in complying with the requirement that instructions on the elements of offenses be given.

Under the procedure prescribed by the 1949 Manual, the "Discussion" and "Proof" of the crime of desertion did not clearly separate the three different types of intent; and so, the intent to remain away permanently, intent to shirk important service, and intent to avoid hazardous duty were treated in the same sentence as if they were one.

This has largely been the reason why law officers fail to distinguish among the different intents when instructing the courts-martial.

In the recent case of United States v. Williams (No 133), 1 USCMA 186, 2 CMR 92, decided February 21, 1952, we held a similar instruction given in a case involving an accused in Korea was prejudicial to his substantial rights because it permitted the court to find him guilty of an offense involving an intent not alleged. Counsel in the present case claim that we overruled CM 245568, United States v. Clancy, 29 BR 215, and related cases, and request a reappraisal of the issue involved. In order to present clearly our interpretation of the three divisions of the offense of desertion and why we believe the results reached in the Williams case, supra, are correct, we review the legislative history of this particular crime.

Under the Articles of War, as enacted June 22, 1874, there was only one type of intent involved in desertion cases. The offense was made punishable under Article 47 of that act, which provided as follows:

"Any officer or soldier who, having received pay, or having been duly enlisted in the service of the United States, deserts the same, shall, in time of war, suffer death, or such other punishment as a court-martial may direct; and in time of peace, any punishment, excepting death, which a court-martial may direct."

The definition of the crime of desertion covered by that Article was given by Colonel Winthrop, in his Military Law and Precedents, Second Edition (1895), at page 637 of the 1920 reprint, as follows:

"A deserter is one who absents himself from his regiment, or military station or duty, and from the service, without authority, and with the intention of not returning. The offense of desertion thus consists of the minor offense of absence without leave coupled with and characterized by a deliberate purpose not to rejoin the military service but to abandon the same altogether, or at least to

terminate and dissolve the existing military status and obligation, i.e., the pending contract of enlistment. It is thus the animus non revertendi, which is the gist and essential quality of the offense."

In the same work, Colonel Winthrop set forth the elements which must be proved in order to convict a person of desertion (page 639):

"In order to substantiate a charge of desertion under this Article, it is necessary to establish—1, The fact of the due enlistment of the accused, or of the receipt of pay by him; 2, The fact that he absented himself without authority; 3, The fact that he did so with the intention not to return."

The form of the charge and specification under which a deserter was charged were set forth by Colonel Winthrop in the same reprint in the following language (page 1017):

"CHARGE. Desertion, in violation of the Forty-Seventh Article of War.

"Specification. In that A. B., Private, &c, having been duly enlisted in the military service of the United States, did desert the same, and did remain absent as a deserter therefrom till arrested at ————, by ————, on ————."

It is apparent that under the procedure in effect at that time that in order to convict for desertion it was necessary to show that an unauthorized absence was "coupled with and characterized by a deliberate purpose not to rejoin the military service, but to abandon the same altogether," and that this was the only intent embraced within that particular specification. The word "desert" connotes an abandonment and by interpreting the allegations contained in the form specification in the light of the definition of desertion at that time there is justification for a well-founded belief that this particular specification was considered by the military to allege only the particular intent not to return.

That that concept continued in military law until the enaction of the "short

desertion" provisions in 1920 is evidenced by a recitation of the pertinent provisions from the Manual for Courts-Martial, U. S. Army, 1917 (corrected to August 1, 1918). That was the last Manual promulgated prior to the 1920 statutory revisions. The Article of War which designated the offense of desertion at that time was Article 58. It provided as follows:

"Any person subject to military law who deserts or attempts to desert the service of the United States shall, if the offense be committed in time of war, suffer death or such other punishment as a court-martial may direct, and, if the offense be committed at any other time, any punishment, excepting death, that a court-martial may direct."

The definition of the offense appears at page 201 of that Manual, and is as follows:

"Desertion is absence without leave accompanied by the intention not to return."

Under the Forms For Charges and Specifications, contained in Appendix 4 of that Manual, the following is given as alleging the offense of desertion under Article of War 58 (page 338):

"In that ———— did, at ————, on or about the —— day of ————, 19—, desert the service of the United States, and did remain absent in desertion until he (was apprehended) (surrendered himself) at ———— on or about the —— day of ————, 19—."

Under the 1920 Act (corrected by the 1922 enactment) desertion was still a violation of Article of War 58, which provided:

"Any person subject to military law who deserts or attempts to desert the service of the United States shall, if the offense be committed in time of war, suffer death or such other punishment as a court-martial may direct, and, if the offense be committed at any other time, any punishment, excepting death, that a court-martial may direct."

**283**

The above provision is identical with the former enactment; and again, the form of specification for this offense was prescribed by the Manual for Courts-Martial, U. S. Army, 1921, in substantially the same form as predecessor specifications. The definition of the offense, likewise, continued to include the same elements. This is verified by Paragraph 409, page 343, Manual for Courts-Martial, U. S. Army, 1921, which states:

"A. — Absence Without Leave, with Intent Not to Return.

"Both elements are essential to the offense. The offense becomes complete when the person absents himself without authority from his place of service with the intent not to return thereto."

Thus, the only reasonable interpretation that can be drawn from the legislative history is that from 1874 until 1920 the offense of desertion remained substantially unchanged; that it consisted of two elements, absence without leave, and intent to remain away permanently; and that a general allegation that an accused deserted the service by absenting himself without authorization and remained absent in desertion became a phrase of art in the military judicial system which included an implied allegation that he did so only with the intent not to return.

The Articles of War, as enacted in 1920, not only continued Article of War 58 in effect, but broadened the offense of desertion by the inclusion of the following paragraph in Article of War 28:

"Any person subject to military law who quits his organization or place of duty with the intent to avoid hazardous duty or to shirk important service shall be deemed a deserter."

The discussion concerning these offenses is found under subparagraphs B. and C., paragraph 209, page 343, Manual For Courts-Martial, U. S. Army, 1921. There it is stated:

" 'Short desertion.'—Under the the twenty-eighth article of war as amended by the code of 1920 any person subject to military law who 'quits his organization or place of duty with the intent to avoid hazardous duty or to shirk important service shall be deemed a deserter.' Congress thereby adopted the principle that willful absence from dangerous or hazardous duty is desertion, as it is in the British service ('short desertion'). Under this article a man who absents himself in a deliberate or clandestine manner, with a view of (1) avoiding some hazardous duty or (2) of shirking some important service, though he may intend to return when the evasion of the duty or the service is accomplished, is liable to be convicted of desertion, just as if an intention never to return had been proved against him."

The Forms For Charges and Specifications, Appendix 6, Manual for Courts-Martial, U. S. Army, 1921, included the standard specification previously alluded to, but added a new form to fit the newly enacted short desertion offense. This specification was as follows:

"In that ——— did, at ———, on or about the — day of ———, 19—, desert the service of the United States, by quitting his (organization) (place of duty), with the intent (to avoid hazardous duty, to wit: ———), (to shirk important service, to wit: ——— )."

Though the form of specification for these short desertion offenses set out in the Manual included an express allegation of the specific intent involved in the offense alleged, it is worth repeating that the form of specification for the offense of desertion with intent to remain away permanently was left unchanged. Moreover, no change was made in any of these specifications until the promulgation of the Manual for Courts-Martial, United States, 1951. That Manual, for the first time, changed the old form by including the specific allegation of intent not to return. See Martial, U. S. Air Force, 1949, p 314. 1928, p. 240; and Manual for Courts-Martial, U. S. Air Force, 1949, p. 314. Accordingly, after the enactment of 1920 there were at least three principal

**284**

separate and distinct ways in which the offense of desertion might be committed, and they were based upon three different mental attitudes. Since the Manuals, after the new offenses were brought into existence, failed to change the long established form of specification for desertion predicated on the intent to remain away permanently, and since the other forms of intent are covered by differently worded specifications, we conclude that the legislative acts and the Manuals prepared to supplement them compel a holding that the long used and so-called general specification of desertion was the approved way in which to allege absence without authority with intent not to return.

While we have discussed desertion founded on three different mental attitudes, the offense can be predicated on other different and distinct elements. The offense has been defined by the Articles of War to include an officer who, having turned in his resignation, quits his post without leave and with intent to absent himself permanently therefrom; and an enlisted man who, without having received a regular discharge, enlists in a sister service. It is significant to note that there have been and still are specifications particularly tailored to meet these offenses, so that if the early used form is interpreted to allege only an intent not to return, then we have a single and easily identified specification fitting each type of desertion. Interpreted otherwise, we have a situation where each charge of desertion based on intents other than intent not to return has a tailor-made charge, yet all would necessarily be included under the alleged general form which was prescribed as early as 1874. If it were intended that all the subsequently legislated offenses of desertion were to be embraced within the first prescribed specification, then a lot of misleading and unnecessary work has been performed.

It is doubtful that there would be any reason to question our conclusions if it were not for the holdings of the boards of review in the case of United States v. Clancy, supra, and a few allied cases. In the Clancy case the board of review held that under a specification alleging the accused deserted the service and remained absent in desertion until apprehended it was permissible to base a finding of guilty on facts which established an intent to avoid hazardous duty or shirk important service. We recognize that there is merit in some of the principles announced in that case, but in view of the fact that we are trying to pattern a new procedure which will make for a more orderly military judicial system and for the additional reasons hereinafter expressed we prefer to adopt a rule which will more adequately protect the rights of the accused. Various Manuals have, with respect to the preparation of specifications, dealt with the necessity of alleging a specific intent when it is an element of the offense. The 1928 Manual, p 18, par 29; 1949 Manual, U. S. Air Force, p 22, par 29; and the 1951 Manual, p 31, par 28a (3), all prescribe that any intent expressly made an element of the offense should be alleged. While it may be, as stated in the Clancy case, supra, that this is not mandatory, it is certainly a fair assumption that an accused and his counsel would be led to believe that a fair attempt was made to draft a specification in compliance with those provisions and that the specification herein used, as it always has been, alleged a specific intent not to return.

The Manual is the "Bible" for the military lawyers, and if they were to read its requirements and inspect the form of specifications in the appendices they would undoubtedly arrive at a conclusion that the issue framed by the specification was confined to one specific intent. Another fair assumption would be that if the Government intended to rely on a specific type of intent other than intent not to return, the appropriate form would be used. If counsel were lulled into that belief, and it would not be unreasonable, by the long established procedure and the contents of the Manuals, there would be no occasion to make a motion to plead the offense more particularly. Neither would there be an expectation that, by failing to demand more details, the accused would be required to defend on an issue dif-

285

ferent from the one encompassed within the pleadings.

That we are not making unwarranted assumptions may be gathered from the comments of the staff judge advocate contained in his review of the conviction. His remarks are clearly pertinent to show the probability of military counsel being misled on the nature of the intent charged. In his report to the convening authority he stated:

"I do not believe that the court was misled by this polyglot and indiscriminate instruction as the members were well aware of the fact that conventional desertion alone was involved and accordingly that the instructions on other and foreign elements were inapplicable."

We have been discussing principles enunciated prior to the time the Uniform Code of Military Justice became effective. However, it is more important to confine the issues to the offense pleaded under the new procedure, which requires the law member to give instructions on the elements of the offense, than it was under the former practice. No longer does the law officer deliberate on the findings, advise the members of the court on the law during their deliberations, and thereby render legal restraints on the court. Now, the court must look to the law member for advice on the law prior to retiring, and if he, in effect, misinforms the members that they may go outside the allegations of the specification to return a verdict of guilty, then there is no semblance of legal order and procedure. One of the principal reasons for adopting the new method of procedure was to require the court to find beyond a reasonable doubt the presence of the essential elements of the offense charged, and not to permit a finding of guilty to be made on elements foreign to the issue. While it may be argued that general intent is in issue under this specification and that the accused should be prepared to meet any alleged mental attitude, nevertheless, by taking into account the limitations inherent in the military judicial system the better practice is to narrow the limits so that the accused is fairly presented with defending

against the specific elements of the offense charged. The Army has acknowledged the desirability of such a rule as a number of cases have been reversed by boards of review when a specific intent is alleged and the accused has been found guilty on facts showing a different intent. If that constitutes a fatal variance between proof and allegation, then we see no good reason why the same principles should not be applied to a specification which, though general, impliedly alleges one particular mental attitude and the proof establishes another.

We are cognizant of the fact that civilian courts have liberalized the rules of pleading and have required the defendants to file appropriate pleadings, such as requests for bills of particulars, if they desire more specific allegations. We might be inclined to adopt this rule if it were not for the fact that no such standard practice has been prescribed for the military, and counsel for the accused is faced with many difficulties not encountered in civilian practice. For the most part, defending an accused is a part-time job of an officer and the lack of time, absence of legal forms and authorities, inexperience in the details of legal procedure, and interference by other military duties, particularly in combat areas, must be considered in weighing the burden to be saddled on military lawyers. If, because of the peculiarities ▌ of the military service, a variation from civilian practice is necessary to assure a fair trial, we should unhesitatingly adopt the procedure best suited to the administration of military justice, even though by so doing we may bring about a departure from a prior service rule.

We, therefore, place the burden on the prosecution to allege specifically the type of mental attitude ▌ to be used as a base for a finding of guilt, and so long as the general allegation is used this will be considered as alleging only an intent not to return. For the foregoing reasons we reaffirm the rule adopted in the Williams case, supra, held the giving of the instruction was

286

error, and turn now to a consideration of the question of prejudice.

There are two possible intents which are interwoven inextricably by the facts of this case. The accused was charged with absenting himself while enroute from Westover Air Force Base, Massachusetts, to McAndrew Air Force Base, Newfoundland. The evidence may preponderate in favor of an intent to abandon the service permanently, but the accused testified and denied that he so intended. No one contends that the court was bound to believe his testimony, and that it was therefore required to find some other intent or return a finding of not guilty. But, the very fact that he left while on orders to report to a post outside the continental United States brings into prominence an intent to shirk important service. It is well established in military law that absence without leave with knowledge of immediate overseas movement is sufficient from which a court may find desertion predicated on the intent to shirk important service. See par 146a, Manual for Courts-Martial, U. S. Air Force, 1949, and par 164a (2), Manual for Courts-Martial, 1951. A fortiori, going absent while enroute to an overseas base would furnish the predicate for desertion under that arm of the offense.

It requires little discussion to establish that the court in this instance could believe that the accused did not intend to abandon the service permanently, but did intend to avoid being shipped to Newfoundland. The evidence is not weighted overwhelmingly in favor of intent not to return. As a matter of fact, good arguments could be advanced that the scales tilted in favor of intent to shirk important service. Be that as it may, if, by a process of mental reasoning, the members of the court concluded the proof of either intent would be sufficient to establish the other, the accused was convicted of an offense beyond the fair confines of the pleadings. He thought he had a good defense to being absent with intent to abandon the service, and he could be excused for believing that this was the only issue he had to meet. When the law officer, at the close of the trial, interjected another element, the accused was materially prejudiced in that the findings could be based on an uncharged and untried issue. In view of the evidence, there is a reasonable probability that the court followed the instructions given and considered an element foreign to the charge. The instruction should have been tailored to the specification and by broadening the issues beyond the pleadings, the law officer committed error which may have affected the findings. While the impact cannot be measured by this Court, it is sufficiently influential as to require a reversal.

Accordingly, the decision of the board of review is reversed and the case remanded to The Judge Advocate General for action consistent with the views herein expressed.

Chief Judge QUINN and Judge BROSMAN concur.