UNITED STATES, Appellee

v.

LOUIS H. BOONE, Private First Class, U. S. Air Force, Appellant

1 USCMA 381, 3 CMR 115

No. 320

Decided May 9, 1952

Col. Kenneth B. Chase, USAF, and Maj. Harry T. Dykman, USAF, for Appellant.

Col. Wendell C. Dreier, USAF, and Capt. William E. Shannon, USAF, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

Petitioner was tried by a general court-martial sitting at Clark Field, Philippine Islands, for desertion under Article of War 58, 10 USC § 1530. The charge and specification alleged that he, while at Clark Field, deserted the service of the United States and remained absent in desertion until apprehended at Manila, Philippine Islands. A plea of not guilty to both the charge and the specification was entered, but petitioner was found guilty of both. The court sentenced him to be dishonorably discharged from the service, to forfeit all pay and allowances and to be confined at hard labor for 2 years. The convening authority and a board of review in the office of The Judge Advocate General of the Air Force approved the findings and sentence with minor modifications. We granted review to consider whether, under the facts of this case, the instructions of the law officer on intent were erroneous and prejudicial to the substantial rights of the accused.

The particular specification under which the petitioner was tried alleged the offense in the following language:

"In that Private First Class Louis H. Boone, . . . did, at Clark Air Force Base, . . . on or about 28 April 1949, desert the service of the United States, and did remain absent in desertion until he was apprehended at Manila, Philippine Islands, on or about 14 May 1951."

The law officer, in charging the court, gave the elements of proof to be as follows:

". . . That you, the court, may find the accused guilty if you find that the accused absented himself without leave or remained absent without leave from his place of service, organization, or place of duty as alleged; that he intended at the time of absenting himself or at some time during his absence to remain away permanently from such place, or to avoid hazardous duty, or to shirk important service as alleged; that his absence was of a duration and was terminated as alleged, . . ."

This Court has, in previous instances, criticized the giving of similar instructions in desertion cases. In the cases of United States v. Williams, (No 133), 1 USCMA 186, 2 CMR 92, decided February 21, 1952; United States v. Hemp, (No. 290), 1 USCMA 280, 3 CMR 14, decided April 8, 1952; United States v. Jenkins (No. 238), 1 USCMA 329, 3 CMR 63, decided April 21, 1952; and in United States v. Moynihan (No. 278), 1 USCMA 333, 3 CMR 67, decided April 21, 1952, we held that instructions on the intent with which an accused went absent should be limited by the particular intent alleged and that it was error to instruct the court-martial that it could base a finding on a different intent. In the Hemp case, supra, we held that a specification alleging desertion in general terms, as was done here, limited the intent in issue solely to an intent to remain away permanently. Accordingly, the instruction given should have been limited to fit that charge.

In keeping with the principles announced in the foregoing cases we hold the law member erred when he instructed the court-martial that a finding of guilty could be based on an intent to avoid hazardous duty or to shirk important service. However, as stated in the Jenkins and Moynihan cases, such error does not require a reversal unless it is prejudicial to the substantial rights of the accused. We, therefore, review the facts in this case to test whether prejudice resulted from the error.

The accused was a member of Headquarters and Headquarters Squadron, 6200th Air Base Group, stationed at Clark Air Force Base in the Philippine Islands. He went absent without leave on or about April 25, 1949. Some 2 years later he was apprehended by

382

civilian investigators and returned to military control. These investigators, acting on information furnished them, proceeded to the home of one Mrs. Yuzon, a Philippine national, where they found the accused. He had been living with a Philippine woman for some considerable period of time, had fathered three children, and a fourth was expected. He was dressed in civilian clothes and, according to the story related to the investigators, during the time of his absence he had been working as a driver of a public utility jeep. He must have represented to local authorities that he was a civilian as he was carrying a receipt showing payment of a fee for a license to drive public utility vehicles. He admitted going absent without leave on April 25, 1949, and related generally where he had been living in civilian communities during his absence.

To emphasize the fact that there was no real issue of intent to avoid hazardous duty or to shirk important service we direct attention to the sequence and nature of proof, the manner the Government pursued in establishing the foregoing facts, and the contentions made by counsel in arguing the case to the court. Trial counsel first introduced into evidence extract copies of the morning reports of the squadron to establish only the period of absence. He then called the two civilian investigators to prove the facts and circumstances surrounding the apprehension and to give the explanation offered by the accused. Nothing was said about hazardous duty or important service. The defense did not offer any evidence and so there were no disputed questions of fact. The arguments of counsel were directed toward the sufficiency or insufficiency of the evidence to establish the period of absence as alleged. There was no contention that the accused avoided hazardous duty and no mention was made of important service. These elements crept into the record solely because the law member read the proof from the Manual.

The only element not directly established by the evidence was the intent with which the accused went or remained absent and this obviously had to be inferred from the facts and circumstances established. If, therefore, there is a reasonable probability that the members of the court-martial disregarded the substantial circumstantial evidence and followed the literal wording of the instruction to the extent of basing their finding of guilty on an intent to avoid hazardous duty or shirk important service, then the error was prejudicial, otherwise not.

In the case of United States v. Jenkins, supra, we said:

". . . we place the evidence touching on the two intents on a scale to determine how reasonable men might weigh and evaluate that which bears on each. Figuratively, we use this method to mark the path of departure between the holding in this case and United States v. Williams, supra, and United States v. Hemp, supra. In those cases the pleadings, evidence, arguments and the entire proceedings weighted almost equally on both issues of intent. Reasonable minds might have determined that there was substantial evidence on both sides of the scale, and might have chosen either as a base for an inference of intent. Not so here. This whole proceeding is weighted so overwhelmingly with evidence indicating an intent to avoid hazardous duty that a reasonable mind would have to ignore one side of the scale which was heavily loaded to choose the other which held barely a scintilla. Our understanding of human behavior leads us to believe that when the scales are so obviously out of balance reasonable minds would not be confused or misled as to which intent could be inferred from the facts."

This we believe to be the appropriate test by which we measure the facts of this case.

The possibility of the court-martial finding an intent to avoid hazardous duty is non-existent. The accused was a member of a unit in the Philippine Islands and for all practical purposes he was on garrison duty and not subject to the usual perils or hazards encountered in a combat zone. His service dif-

fered little, if at all, from the service of other Air Force personnel stationed in the United States. At the time accused went absent and for more than one year thereafter there was neither war nor police action being carried on and there is no evidence of any perilous or hazardous mission to be performed during that time. We are convinced that without any allegation of hazardous duty and without any evidence to suggest duties other than those ordinarily performed at an overseas station operating under peace-time conditions the members of the court-martial would not conjure up an intent to avoid hazardous duty merely because an enlisted man went absent without leave.

The question of inferring an intent to shirk important service poses a more difficult problem. But again we are faced with a situation where the evidence weighs so overwhelmingly in favor of an inference of intent to remain away permanently that reasonable minds would not pause to consider an inference of intent to shirk important service. The only bit of evidence even suggesting that the accused was seeking to shirk important service is that he absented himself from a unit serving in the Philippine Islands. The Manual for Courts-Martial, U. S. Air Force, 1949, discusses important service, and paragraph 146a, page 198, states:

"The 'hazardous duty' or 'important service' may include such service as duty in a combat or other dangerous area; embarkation for foreign duty or duty beyond the continental limits of the United States; movement to a port of embarkation for that purpose; entrainment for duty on the border in time of war or threatened invasion or other disturbances; strike or riot duty; or employment in aid of the civil power in, for example, protecting property, or quelling or preventing disorder in times of great public disaster. Such services as drill, target practice, maneuvers, and practice marches will not ordinarily be regarded as included."

Undoubtedly, service beyond the continental limits of the United States may, under certain circumstances, be considered "important service," but we believe that phrase as used in the Article of War and as explained in the Manual denotes something more than the ordinary everyday service of every member of the armed forces stationed overseas. If it does not, then absence without leave and desertion outside the continental limits of the United States would be synonymous. The line of demarcation may be indistinct and difficult in some cases, but for the purposes of this case we need not mark the exact line. We need only determine the improbability of the court-martial members being misled into illogically finding an intent to shirk important service based solely on an airman being stationed overseas when a real substantial predicate for a logical inference of intent to remain away permanently is found in the evidence.

If we marshal the facts to sustain an inference of intent to abandon the service permanently, we find the accused had severed all ties with the military. He had been absent over 2 years, employed as a civilian truck driver, living and posing as a civilian, and maintaining a civilan home, all in close proximity to a military base. Moreover, when his civilian status changed back to that of an airman it was occasioned by apprehension and not by voluntary act on his part. Substantial indicia of an intent not to return to the service are shown by the evidence. Imaginary indicia of other intents are all that can be asserted and this is not sufficient to warrant a holding that the court-martial might have been reasonably misled as to the precise intent which must be found to prove the alleged charge.

Stated a little differently, if we view the evidence through the eyes of the members of the court-martial we see a clear and distinct picture of absence with intent to remain away permanently. We see no evidence which in any way confuses the picture. The members of the court-martial could not have observed a different picture. In order to have been confused they would have had to overlook the obvious and search out that which would be most difficult to see. We do not believe it realistic

and in keeping with the ordinary mental processes of individuals to hold that with a substantial factual base for one inference there was a reasonable probability of the members of the court-martial assuming a base for another inference without any reason for so doing.

Because of the lack of evidence to support an inference of intent to shirk important service or avoid hazardous duty and the preponderance of evidence upon which to base an inference of intent to abandon the service, we believe this case falls within the rule announced in United States v. Jenkins, supra, and United States v. Moynihan, supra.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.