UNITED STATES, Appellee

v

DANIEL B. MERROW, III, Seaman Apprentice (Commissaryman), U. S. Coast Guard, Appellant

14 USCMA 265, 34 CMR 45

No. 16,766

December 6, 1963

*Lieutenant Commander Glenn F. Young* argued the cause for Appellant, Accused.

*Lieutenant Commander Henry A. Cretella* argued the cause for Appellee, United States.

## Opinion of the Court

QUINN, Chief Judge:

More interested in life in the South Pacific than in the Antarctic, the accused and a companion attempted to "jump ship" while it passed Pitcairn Island. The attempt failed when the accused's finger caught in one of the lines attached to an inflated rubber raft that had been lowered from the fantail of the ship; the line had to be cut, and the raft drifted away. The incident led to accused's trial by special court-martial for attempted deser-tion and other offenses in violation of the Uniform Code. About a week after the trial, the accused's ship docked at Wellington, New Zealand, to take on fresh water before continuing its voyage to the South Pole. The accused and his companion left the ship without authority. On the quay, they were noticed by an officer of the ship. He called to them, but they ran. He followed, but gave up the chase when confronted by the accused brandishing an unsheathed knife. Later that day the

accused's ship left Wellington, as scheduled. Two days later the accused was apprehended by the New Zealand police, and turned over to American Naval authorities.

Among the charges filed against the accused, as the result of his conduct in Wellington, was a charge of desertion with intent to shirk important service, "namely, participation in Operation Deepfreeze 1962," in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885. The accused was tried and convicted of this offense and several others, and was sentenced to a bad-conduct discharge, confinement at hard labor for eighteen months, and accessory penalties. With some modification, the findings of guilty were affirmed on review. On this appeal the accused contends that as a matter of law the service he allegedly shirked is not "important service" within the meaning of Article 85.

The accused was a cook aboard the U. S. Coast Guard Cutter EAST-WIND, which was part of Task Force Forty-Three. The Task Force, operating under Navy control, was engaged in Operation Deep Freeze 62. The operation had two purposes. The primary mission was to provide "logistic support" to the U. S. Antarctic Research Program. This program was a continuation of the program of scientific observation and research in the Antarctic which had been part of the 1958 International Geophysical Year. Among other things, the logistic support to be furnished by Task Force Forty-Three contemplated resupply of the scientific bases on Antarctica, at least one of which was operated jointly with New Zealand, and the installation of a nuclear reactor at McMurdo Sound. As a "secondary mission" the Task Force was "to penetrate to the coastline" between the Ross and Amundsen Seas to obtain "oceanographic, cartographic, and geographical data." The scientific stations were staffed principally by civilian personnel. Navy personnel furnished "station support and maintenance functions." However, the basic directive on Task Force Forty-

Three also referred to certain undefined "areas of mutual endeavor."

It appears the EASTWIND acted as escort icebreaker for several different ships headed to and from different bases engaged in the Antarctic program. In addition, the ship transported military and civilian personnel to and from these bases. It does not directly appear whether it, or any of the vessels it escorted, compiled oceanographic or other data between the Ross and Amundsen Seas, in accomplishment of the "secondary mission" of Task Force Forty-Three. Finally, there is evidence to show the accused knew the general mission of the EASTWIND before he left it without authority in Wellington, New Zealand.

Repeating a part of his contention at trial, the accused maintains his service was not "important service" as a matter of law in that the EASTWIND was engaged in its ordinary and everyday duty as an icebreaker. It is immaterial, he argues, that the ice broken by the EASTWIND was in McMurdo Sound rather than in Chesapeake Bay. The argument disregards totally the circumstances under which that duty was performed. Yet, the surrounding circumstances differentiate a particular duty and endow it with that "critical quality" which justifies "its characterization as 'important.'" United States v Deller, 3 USCMA 409, 412, 12 CMR 165. Assignment to overseas duty or to sea duty may, under some conditions, be important service; under others it may not be. Thus, assignment to an overseas unit "during time of war or under emergency conditions and in or near a combat area" is substantially different from assignment today to a unit stationed in Okinawa or Spain. United States v Shull, 1 USCMA 177, 181, 2 CMR 83; United States v Hyatt, 8 USCMA 67, 23 CMR 291; see also United States v Gorringe, 15 CMR 882. As we noted in the *Hyatt* case, at page 68, whether "the 'something more' [that distinguishes important service from ordinary everyday service of the same kind] is present depends entirely upon the circumstances of the particular case." Looking at the surrounding cir-

cumstances of the present case, we cannot say as a matter of law that in relation to Operation Deep Freeze the accused's duty as a member of the crew of the EASTWIND was not "important service" within the meaning of Article 85 of the Uniform Code.

We need not take notice, as Government counsel would have us do, of the international aspects of the Antarctic program. Neither need we consider the Antarctic project in terms of its importance to the scientific endeavors of the United States. The Antarctic program and the EASTWIND'S involvement in it have sufficient elements of importance to lift Operation Deep Freeze above the level of "ordinary everyday service" and justify the court-martial's finding that it is "important service" within the meaning of Article 85. See United States v Boone, 1 USCMA 381, 384, 3 CMR 115.

The Antarctic program is a special one. The area in which it is being carried on is almost inaccessible. The climatic conditions are extreme; and in this isolated region, the task of supplying the bases with personnel and material to carry on the scientific research and observation is not just a routine supply mission. Incalculable hardship and difficulty would face those stationed in this remote region if their supplies and replacements were materially delayed. It was the responsibility of Task Force Forty-Three, of which the EASTWIND was an integral part, to bring men and materials to the bases at allotted times. Some of the men were to build and operate a nuclear reactor. Considering the place and the circumstances, this undertaking alone might be sufficient to place the voyage within the exceptional rather than the commonplace. Taking account of all the factors involved in Operation Deep Freeze, we have no hesitancy in concluding the court-martial could reasonably find that participation in the project was important service.

In reaching our conclusion we have not attempted to distinguish between the mission of the EAST-WIND and the accused's particular duty as a member of its crew. We have not, however, overlooked the fact that unauthorized absence from a unit engaged in an "important service" mission does not itself establish desertion with the intent to shirk important service. As we pointed out in connection with the related offense of desertion with intent to avoid hazardous duty, "the offense is not committed [as a matter of law] by reason of a naked unauthorized absence, without more, from a unit engaged in hazardous duty." United States v Apple, 2 USCMA 592, 593, 10 CMR 90. But the fact that the unit is engaged in important service may "be considered *sufficient evidence*—under some circumstances—that the latter was the moving force behind" the accused's unauthorized absence. *Id.*, page 593. Whether there can be occasions, as the *Apple* case suggests, when the particular duty of the accused is so removed from, or so immaterial to, the mission of the unit as to exclude the latter from consideration in determining the accused's intent need not detain us. Neither need we consider whether, even more than a land unit, a ship on sea duty requires every member of its assigned complement for its effective and efficient operation. The general mission of Task Force Forty-Three and the specific function of the EASTWIND bear significantly on the accused's intent.

True, the accused was a cook with the rank of Seaman Apprentice.[1] Without attempting to ennoble or glamorize the culinary art unnecessarily, there is much in the aphorism, attributed to Napoleon Bonaparte, that "an army marches on its stomach." Although of lowly rank and modest responsibility, the accused's duty was closely connected to the general well-being of the officers

---

[1] There is some evidence in the record that cooks aboard the EASTWIND were in short supply, and the accused's absence required the use of volunteer "non-rated personnel" in the commis- sary and "some reshuffling within the department." It does not appear, however, that the accused knew the EAST-WIND was shorthanded in his department.

and men. It was not unreasonable to conclude that such service in connection with Operation Deep Freeze was "important service."

Moving to the trial, the accused contends he was prejudiced by the law officer's instructions. In substance, he contends the law officer erroneously advised the court-martial that Operation Deep Freeze was important service as a matter of law. Pertinent to the argument are the following parts of the instructions:

". . . The specification to charge I alleges desertion as a violation of article 85 of the code, which provides, in part, that any member of the Armed Forces who quits his place of duty with intent to shirk important service is guilty of this offense. The court is advised that to find the accused guilty of the specification and charge, it must be satisfied by legal and competent evidence beyond a reasonable doubt, 1, that at Wellington, New Zealand, on or about 0230, 29 October 1961, the accused, quit his place of duty as alleged. 2—that the accused did so with intent to shirk important service, namely participation in Operation Deep Freeze, 1962. 3—That the accused knew he would be required for such trip, and 4—that the accused desertion, if any, was about two days duration. Important service may include such service as duty in a combat or other dangerous area, embarkation for foreign duty or duty beyond the continental limits of the United States, or for sea duty. Movement to a port of embarkation for that purpose. All service overseas is not important service. There must be something more than the ordinary everyday service of every member of the Armed Forces stationed overseas. Such service as drill, target practice, maneuvers, practice marches, would not ordinarily be included. You must find that the accused had the specific intent to shirk important service that is participation in Operation Deep Freeze, 1962.

· · · · ·

"Now, I will particularly instruct the court that my decisions on the motions for a finding of not guilty are in no way to be considered by the court. The quantum of proof involved in those motions is different from the quantum of proof with which you are concerned and they have no weight as far as your deliberations are concerned. I will also instruct you to particularly, to ignore the remark which I made concerning the sufficiency of evidence of important service. It's for you to decide whether or not this trip of the EASTWIND was important service, and my remarks are not a part of your deliberations. You are also advised that my rulings as to the admissibility of evidence or the inadmissibility of evidence are no part of your deliberations. My ruling merely says that the evidence is admissible; the weight to be given to the evidence is for you to decide and my ruling has no bearing on the weight. Each of you must impartially resolve the ultimate issue as to the guilt or innocence of the accused in accordance with the law, the evidence admitted in court, and your own conscience."

Standing alone, the initial instructions on the elements of the offense may be ambiguous. They are somewhat similar to instructions in a threat case which advise the court-martial that it must find the accused " 'wrongfully communicated . . . a threat, to wit: [specifying the words set out in the specification]' " which we indicated can be mistakenly construed as a direction that the words allegedly used "constitute a threat as a matter of law." United States v Hazard, 8 USCMA 530, 532, and footnote at page 533, 25 CMR 34. It would, therefore, be helpful to advise the court-martial, directly and plainly, that the question of whether the service alleged is "important service" is a question of fact which must be determined by it beyond a reasonable doubt. United States v Hyatt, supra. However, the present instructions do not stand alone. They are amplified by other instructions on the point of important service. These later instructions must

**269**

be considered with the earlier ones. United States v Smith, 8 USCMA 582, 25 CMR 86.

Ambiguity in one part of the instructions may be clarified by another part so as to provide the court-martial with a clear understanding of the facts it must find before it can return a finding of guilty. United States v Simpson, 10 USCMA 543, 28 CMR 109; see also United States v Cotton, 13 USCMA 176, 32 CMR 176. Here, the court-martial was advised that all overseas service is not important service. It was also instructed "to ignore" the comments on "the sufficiency of [the] evidence of important service" because they were entitled to "no weight" in its deliberations. These instructions are understandable only as a direction that the court-martial must determine for itself whether the accused's participation in Operation Deep Freeze was important service. Apparently, they were so understood by defense counsel. See United States v Acosta-Vargas, 13 USCMA 388, 32 CMR 388. Earlier in the trial, he had moved for appropriate relief because, in ruling in open court on an objection to the admission into evidence of certain testimony, the law officer indicated he believed the evidence "prima facie . . . established [Operation Deep Freeze] as important service." Counsel argued the court-martial could "infer" from the law officer's comment that he had "decided . . . there has been sufficient evidence adduced . . . on which they . . . [could] determine that important service has been established." The law officer said he would instruct the court-martial to "discard" any remark which "might indicate" that Operation Deep Freeze was important service as a matter of law. The final instructions which we have quoted above, apparently satisfied defense counsel on the specific point. Both trial and defense counsel argued to the court-martial at length on whether the mission of EASTWIND in Operation Deep Freeze was important service. Part of defense counsel's argument merits repetition; he said:

". . . Now I would like to return to what I regard as an extremely serious charge, that of desertion, intent to shirk important service. The testimony of Commander Green, who is the acting commanding officer read right out of Operation Deep Freeze, which is the bible by which his vessel operated, it states very, very plainly invery [sic] plain language, no misunderstanding possible, that they were down there to give logistic support to what was nothing more than a scientific operation. I realize scientific research is a vital thing; I know that the job of the EASTWIND breaking ice is a necessary part of this operation and just as necessary as a bulldozer breaking a trail if they were going to build a new loran station. Our buoy tenders go out and break ice to keep the commerce lanes open. Our buoy tenders go out in the middle of the night and day and pick up buoys that run in under the ice. This is all part and parcel of our everyday life. This is for us ordinary service."

Argument of counsel is, of course, no substitute for correct instructions, but it can sometimes clarify the meaning of a particular instruction. United States v Williams, 13 USCMA 208, 32 CMR 208. In our opinion, the instructions adequately apprised the court-martial that it must determine for itself whether the service alleged was important service.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.