UNITED STATES, Appellant and Cross-Appellee

v

FLOYD B. McKENZIE, Private, U. S. Army,
Appellee and Cross-Appellant

14 USCMA 361, 34 CMR 141

*First Lieutenant William L. Leonard* argued the cause for Appellant, United States. With him on the brief were *Colonel Bruce C. Babbitt* and *Lieutenant Colonel Francis M. Cooper.*

*Captain Robert E. Shepherd, Jr.,* argued the cause for Appellee, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Captain Charles W. Schiesser.*

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of desertion with intent to avoid important service, in violation of Uniform Code of Military Justice, Article 85, 10 USC § 885. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. The convening authority approved the sentence. The board of review affirmed findings of guilty of absence without leave for the period involved and only so much of the sentence as provided for bad-conduct discharge, total forfeitures, and confinement at hard labor for ten months. Its decision has been certified to this Court by The Judge Advocate General of the Army upon the following question:

"WAS THE BOARD OF REVIEW CORRECT IN HOLDING THAT EVIDENCE OF THE ACCUSED'S ORDERS ASSIGNING HIM TO THE EIGHTH UNITED STATES ARMY PERSONNEL CENTER WAS AS A MATTER OF LAW INSUFFICIENT TO SUPPORT A FINDING THAT THIS SERVICE WAS 'IMPORTANT SERVICE' WITHIN THE MEANING OF ARTICLE 85(a)((2) OF THE UNIFORM CODE OF MILITARY JUSTICE?"

In addition, we granted accused's cross-petition for review upon the contention that he was denied military due process by confinement for a period of seventy-nine days during which time no charges were preferred against him.

According to the evidence, the accused, while stationed at Fort Bragg, North Carolina, was issued orders directing him to report to the United States Army Overseas Replacement Station, Oakland Army Terminal, California, on March 19, 1962, for transfer to the Eighth United States Army Personnel Center, APO 20, San Francisco, California. Apparently, he departed from Fort Bragg, North Carolina, in compliance with such orders on February 6, 1962. He did not, however, report to the Oakland Army Terminal, nor did he report to the Eighth United States Army Personnel Center. On January 5, 1963, accused surrendered himself to civilian authorities and was returned to military control on the same date.

The Eighth United States Army Personnel Center is located in Korea, and accused's orders indicated his military occupational specialty to be that of infantryman. In a voluntary statement executed on January 7, 1963, accused declared that this absence was motivated by an intent to avoid shipment to Korea. He further stated that, if given the opportunity to remain in service, he "would go AWOL again" and "I don't like it, I hate it."

The board of review reduced the findings of guilty to absence without leave, as it found nothing in the record upon which a finding might be predicated that the service which the accused intended to avoid was "important," in the sense of Code, supra, Article 85. Before us, the Government contends the board erred and compares present day overseas service in Korea to " 'foreign service during time of

war or under emergency conditions and in or near a combat area.'" United States v Taylor, 2 USCMA 389, 9 CMR 19, at page 391; United States v Shull, 1 USCMA 177, 2 CMR 83. The analogy, we believe, is inapt.

In United States v Shell, 7 USCMA 646, 23 CMR 110, this Court noted, with respect to applicable Statutes of Limitation, that hostilities were terminated in Korea on July 27, 1953. We pointed out, at page 651:

". . . [T]he whole theory upon which the presence of our troops in Korea was premised changed with the signing of the Armistice. We were no longer there to repel aggression; thereafter our mission was to maintain a peaceful status quo. Our military situation was that of immediate readiness, not armed conflict."

See also United States v Busbin, 7 USCMA 661, 23 CMR 125.

In like manner, it may be noted that on August 5, 1955, the President restored limitations on maximum punishments for violation of certain Articles of the Code in the Far East Command, even though it is traditional to decree that such crimes be punished without restriction in time of war. Executive Order No. 10628, August 5, 1955, 20 Fed Reg 5741; Addendum to the Manual for Courts-Martial, United States, 1951, January 1963, page 8. These considerations indicate a situation in Korea today far different from that encountered in United States v Shull and United States v Taylor, both supra. The distinction is one to be drawn between time of peace and time of war. While it does not govern the question[1] whether an accused has been ordered on important service, see United States v Merrow, 14 USCMA 265, 34 CMR 45, it does indicate that Korean service, despite sporadic incidents of violence, is not to be treated, *per se*, as important duty.

If Korea, then, is not to be specially differentiated from the other overseas outposts at which our troops are on

1. United States v Shell, 7 USCMA 646, 651, 23 CMR 110.

guard against potentially aggressive forces, there was, as the board of review said, nothing presented to the court-martial upon which its members might base a finding that accused's intended service possessed any of those peculiar hallmarks which branded it as "important" within the meaning of Code, supra, Article 85. In a very general sense, of course, any military service is important both to the Nation as a whole and to the particular unit and individuals involved. But that is not the sort of duty Congress had in mind when it enacted the applicable punitive sanction. As we have heretofore held, the usual course of duty overseas is excluded from the ambit of Article 85. Thus, in United States v Boone, 1 USCMA 381, 3 CMR 115, we declared, at page 384:

"Undoubtedly, service beyond the continental limits of the United States may, under certain circumstances, be considered 'important service,' but we believe that phrase as used in the Article of War and as explained in the Manual *denotes something more than the ordinary everyday service of every member of the armed forces stationed overseas*. If it does not, then absence without leave and desertion outside the continental limits of the United States would be synonymous." [Emphasis supplied.]

To the same effect, see United States v Hemp, 1 USCMA 280, 3 CMR 14; United States v Deller, 3 USCMA 409, 12 CMR 165; United States v Stabler, 4 USCMA 125, 15 CMR 125; and United States v Hyatt, 8 USCMA 67, 23 CMR 291. Indeed, in this very Term, we pointed out:

". . . Assignment to overseas duty or to sea duty may, under some conditions, be important service; under others it may not be. Thus, assignment to an overseas unit 'during time of war or under emergency conditions and in or near a combat area' is substantially different from assignment today to a unit stationed in Okinawa or Spain. . . . As we noted in the *Hyatt* case, at page 68,

**363**

whether 'the "something more" (that distinguishes important service from ordinary every day service of the same kind) is present depends entirely upon the circumstances of the particular case.' " [*Merrow, supra*, at page 267.]

It is this "something more" which is conspicuously absent from this record. The accused is shown to have been ordered in the ordinary course of duty to a personnel replacement center in Korea. His specialty was that of the usual infantryman. Thus, what is made out is nothing more than intent to avoid "the ordinary everyday service of every member of the armed forces stationed overseas." United States v Boone, supra, at page 384. As this is not enough to characterize the accused's service as "important," the board of review correctly decided the evidence was insufficient in law to support the findings of guilty. The certified issue, therefore, must be answered in the affirmative.

We have carefully scrutinized the circumstances surrounding the granted issue. The record establishes the undue delay in preference of charges was occasioned by the necessity to locate accused's records, which were in his custody when he absented himself without leave; to obtain from jurisdictions as scattered as Korea and Fort Bragg evidence regarding the charge ultimately alleged; and to obtain information upon which to conduct the defense. It appears, therefore, that at all times and in accordance with Code, supra, Article 10, 10 USC § 810, immediate steps were being taken to inform the accused of the specific wrong with which he was charged and to try him. We note, however, that, although these matters are discernible in the record, they were not expressly reported in writing to the officer exercising general court-martial jurisdiction, as required by the provisions of Code, supra, Article 33, 10 USC § 833. While, under the particular circumstances of this case, we find neither a denial of due process nor prejudice to the substantial rights of the accused, we emphasize the duty and responsibility of every officer to comply with the mandates of the Uniform Code. In the past, we fear, Article 33 has been observed more often in the breach than in following its clear terms. In order to avoid future controversies in this area, we suggest that the attention of all concerned with the processing of court-martial matters be forcibly drawn to its unambiguous command.

The certified question is answered in the affirmative, and the decision of the board of review is affirmed.

Chief Judge QUINN and Judge KIL-DAY concur.

UNITED STATES, Appellee