# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Louis M. FAZO,
### Boatswain's Mate Third Class (E-4), U.S. Coast Guard

## CGCMS 24310

## Docket No. 1239

## 25 May 2006

Special Court-Martial convened by Commanding Officer, Integrated Support Command Portsmouth. Tried at Norfolk, Virginia, on 1-2 February 2005.

| | |
|---|---|
| Military Judge: | CDR Timothy G. Stueve, USCG |
| Trial Counsel: | LT Patrick M. Flynn, USCG |
| Assistant Trial Counsel: | LT Angela R. Watson, USCGR |
| Defense Counsel: | LT Gretchen D. Sosbee, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LCDR John S. Luce Jr., USCG |

## BEFORE
## PANEL TEN
## BAUM, McCLELLAND, & FELICETTI
Appellate Military Judges

FELICETTI, Judge:

Appellant was tried by a special court-martial, military judge alone. Contrary to his pleas, Appellant was convicted of one specification of desertion with intent to shirk important service, in violation of Article 85, Uniform Code of Military Justice (UCMJ), and one specification of missing movement, in violation of Article 87, UCMJ. Appellant was acquitted of a third charge. The military judge sentenced Appellant to a bad-conduct discharge and confinement for three months. The Convening Authority approved the sentence as adjudged but suspended all confinement in excess of sixty days for six months from the date of the Convening Authority's action.

Before this Court, Appellant has assigned three errors: (1) that the evidence was factually and legally insufficient to sustain a charge of desertion with intent to shirk important service, (2) that the evidence was legally and factually insufficient to support a conviction of missing movement, and (3) that an unsuspended punitive discharge is inappropriately severe where the evidence showed that Appellant's actions were based upon a valid concern for his wife's safety. The Court heard oral argument on Assignment I, discussing the intent to shirk important service and the defenses of duress and necessity on 9 November 2005.

All assignments are rejected. Assignment of error I will be discussed.

## Facts

Appellant reported for duty in Bahrain aboard the 110-ft. patrol boat USCGC AQUIDNECK in December 2003 as a quartermaster of the watch. During this period, the AQUIDNECK's operational schedule consisted of the following pattern: transit to Iraq, patrol Iraqi coastal waters and rivers for twelve to fifteen days, return to Bahrain, rest and refit for three to four days, repeat. The majority of patrol time was spent on security duties for tier one assets, such as oil platforms in restricted waters with few reliable aids to navigation. The tempo of operations was very high, with the number of patrol hours around four times that of an identical patrol boat within the United States.

In January 2004, Appellant's wife was the victim of two minor property crimes, which led to panic attacks, depression, and calls to Appellant in Bahrain several times per day for support. With the approval of his command, Appellant returned to the U.S. to be with his wife and address these difficulties. Appellant stayed in California with his spouse until the middle of March. While the timeline is obscure, it appears that the Fazos used the time from January to March 2004 to move from San Jose, California, to a nearby city where Mrs. Fazo would feel safer. For unexplained reasons, no effort was made to seek medical or psychiatric treatment for Mrs. Fazo through normal medical channels. Instead, the Fazos appear to have focused their efforts on contacting various Coast Guard officials, including a Command Master Chief and chaplain, for assistance in keeping Appellant from having to return to Bahrain.

2

Sometime in mid-March, Appellant reported to the Integrated Support Command in Portsmouth, Virginia, which provided support for the AQUIDNECK and other cutters deployed to the Middle East.  Mrs. Fazo joined him at some point.  Appellant underwent medical evaluation until 18 May 2004 when he was found fit for full duty.  No similar effort was made by the Fazos to obtain medical or psychiatric treatment for Mrs. Fazo during this period.  On 19 or 20 May 2004, Appellant was ordered to report to a return flight to Bahrain on Sunday, 23 May 2004.

Appellant did not report for the flight as ordered.  In a voicemail to his supervisor sometime on the weekend of 22-23 May 2004, Appellant cited several reasons for missing the flight and "disobeying an order."  (R. at 61-63.)  The reasons centered on continuing family problems such as his wife's delicate mental state, a possible divorce, and a desire to continue his and Mrs. Fazo's counseling.  Appellant also stated, twice, that he would report to work on Monday, 24 May 2004 to face the consequences of his decision.

Not everything Appellant said in this voicemail was true.  Mrs. Fazo was not actually receiving counseling at this time.  Also, Appellant did not report for duty on 24 May and remained absent from his Portsmouth unit until 21 June 2004.

### Assignment I

Appellant disputes the legal and factual sufficiency of the evidence with respect to the desertion charge.  As part of this assignment of error, Appellant asserts that his duty on the AQUIDNECK was not proven to be important service within the meaning of Article 85, UCMJ, and that Appellant had no intent to shirk any service, important or otherwise.  Instead, Appellant asserts that defense evidence raised the possibility that his spouse was suicidal at the time he absented himself from his unit.  This evidence, according to Appellant, either negated his specific intent to shirk or raised a potential affirmative defense that the Government failed to disprove.  *See* Rules for Court-Martial (R.C.M.) 916(h), Manual for Courts-Martial, United States (2005 ed.).[1]

"The test for legal sufficiency requires courts to review the evidence in the light most favorable to the Government.  If any rational trier of fact could have found the essential elements

---

[1] The 2002 edition of the Manual for Courts-Martial was in effect at the time of the offenses resulting in the charges. However, the versions of the relevant provision in both the 2002 and 2005 editions are identical.

of the crime beyond a reasonable doubt, the evidence is legally sufficient." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (*citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) and *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)).

The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is convinced of the accused's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325. In accordance with Article 66(c), UCMJ, we conduct a *de novo* review of the record. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002); *United States v. Oestmann*, 61 M.J. 103, 106 (C.A.A.F. 2005) (*quoting United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002)).

### Important Service

Within the meaning of Article 85, UCMJ, service is important if an objective evaluation of the expected military situation in which the duty or service is to be performed indicates that it is more significant than the ordinary everyday service of members of the Armed Forces. *See United States v. Gonzalez*, 42 M.J. 469, 473 (C.A.A.F. 1995). The "something more" that distinguishes important service from ordinary service depends entirely upon the facts of each case. *United States v. Merrow*, 14 USCMA 265, 267, 34 C.M.R. 45, 47 (C.M.A. 1963) (*discussing United States v. Hyatt*, 8 USCMA 67, 68, 23 C.M.R. 291, 292 (C.M.A. 1957)). Activities such as drill, target practice, maneuvers, and practice marches are not normally considered important service. Manual for Courts-Martial, Pt. IV, ¶ 11 (MCM), United States (2005 ed.). Additionally, a routine overseas assignment is not *per se* important service. *United States v. McKenzie*, 14 USCMA 361, 363, 34 C.M.R. 141, 143 (C.M.A. 1964).

Important service, on the other hand, is not limited to direct combat support or highly unusual duties. For example, an E-2's cooking duties onboard the Coast Guard Cutter EASTWIND during Operation Deep Freeze were found to be important. *Merrow*, 14 USCMA at 268, 34 C.M.R. at 48. In that case, the ship's mission involved ice-breaking duty in logistic support of a scientific mission in the Antarctic. *Id.* at 267, 34 C.M.R. at 47. While an older case, it is significant that our higher court cited *Merrow* in a 1995 decision to establish the objective standard for important service and in their factual analysis of important service. *See Gonzalez*, 42 M.J. at 472-73 (*citing Merrow*, 14 USCMA 265, 34 C.M.R. 45 (C.M.A. 1963)).

In this case, the Government unwisely delayed introduction of some of the best evidence about the AQUIDNECK's duties and operational tempo until the sentencing phase of the trial. This testimony of the AQUIDNECK's Commanding Officer cannot be considered on the question of guilt. However, other testimony from Appellant's Portsmouth supervisor showed that the AQUIDNECK was protecting the Iraqi oil infrastructure from the type of terrorist attacks that had recently resulted in the deaths of one Coast Guardsman and two Navy personnel. There was also testimony about the importance of the Iraqi oil infrastructure and Appellant's service on the AQUIDNECK. We are, therefore, convinced that Appellant's assignment was important service for purposes of Article 85, UCMJ.


**Intent to Shirk**

Desertion with intent to shirk important service is a specific intent offense. MCM, Pt. IV, ¶ 9.b.(2); *Gonzalez*, 42 M.J. at 472; *Merrow*, 14 USCMA at 269, 34 C.M.R. at 49. The accused must have the specific intent to shirk the important service. *Merrow*, 14 USCMA at 269, 34 C.M.R. at 49. Therefore, contrary to the Government's argument at trial, an unauthorized absence with knowledge that the unit was to perform important service does not automatically satisfy the intent element. *Id.* at 268, 34 C.M.R. at 48; *see also United States v. Apple*, 2 USCMA 592, 593, 10 C.M.R. 90, 91 (C.M.A. 1953) (discussing the intent to shirk hazardous duty). On the other hand, the factfinder may infer the required specific intent from all the evidence, including evidence of an intentional absence and knowledge of the important service. *Merrow*, 14 USCMA at 268, 34 C.M.R. at 48; *see also Apple*, 2 USCMA at 593, 10 C.M.R. at 91 (intent to shirk hazardous duty); *United States v. Squirrell*, 2 USCMA 146, 150-51, 7 C.M.R. 22, 26-27 (C.M.A. 1953) (intent to shirk hazardous duty).


While all the evidence may be considered in determining intent, this element goes to the accused's immediate intent, not his ultimate goal. *United States v. Huet-Vaughn*, 43 M.J. 105, 113-14 (C.A.A.F. 1995). If the accused had the required specific intent to avoid a certain duty or shirk important service, then it does not matter if she also ultimately intended to perform a legal, or even noble, act. *Id.* The ultimate goal, also sometimes called an ulterior intent, is more properly labeled a motive. *Id.* This motive, no matter how compelling, cannot negate the accused's immediate intent. *Id.* at 114. For example, it is immaterial that one who takes money with the intent to steal it also intends to use the money to buy food for a hungry child. *Id.* at 113

(*quoting* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 3.5(d), 313 (West 1986)). The motive to feed the child does not replace the immediate intent to steal the money. *Id.*

Obviously, in some cases a motive may help establish an affirmative defense such as duress. R.C.M. 916(h). The motive, however, is only relevant to the extent it establishes a recognized defense. *See Huet-Vaughn*, 43 M.J. at 114-15. For example, quitting a unit due to one's conscience, religion, personal philosophies, or moral, ethical or professional reservations is not a defense. *Id.* at 115. These motives, along with any others, do not replace the immediate intent to quit one's unit, or shirk important service. *Id.*

Appellant asserts that the evidence raised the possibility that Mrs. Fazo was suicidal at the time of the charged offense. This evidence, according to Appellant, either negated his specific intent to shirk, or raised a potential affirmative defense that the Government failed to disprove. *See* R.C.M. 916(h). We have carefully examined the record before us, paying close attention to Appellant's words and actions during the relevant period and what Mrs. Fazo did, and did not, say during her testimony. We find no credible evidence that Appellant perceived a suicide risk at the time of the charged offense. Mrs. Fazo did not testify that she was suicidal. She did not testify about any communication or action that might have made Appellant believe she was suicidal. In fact, Mrs. Fazo said nothing about the many weeks before and after Appellant's charged offense.

Appellant's words and deeds at the time of the offense also offer no support for his argument. He certainly did not mention suicide in the long voicemail message. Instead, Appellant cited several reasons for missing the flight including, in order: "going through a number of problems;" "… I got my wife here in Virginia and she is just not having it, sir;" "I am going to go over there and lose my marriage;" and "dealing with a delicate, delicate person right now." (R. at 61-63.) We do not believe Appellant would have used this ambiguous language to communicate a fear that his wife was going to commit suicide. Moreover, Appellant failed to obtain medical or psychiatric treatment for Mrs. Fazo, again showing no perception of any suicide risk.

Instead of getting immediate help in May 2004, Mrs. Fazo simply returned to California where she made her own arrangements to see a marriage, family, and child therapist sometime in

July 2004, well after Appellant returned to his unit in Portsmouth. At some point, this counselor re-created Mrs. Fazo's mental state and concluded that she had been suicidal back in May 2004. Appellant, of course, was unaware of this future conclusion when he missed the flight to Bahrain, and his contemporaneous words and actions are inconsistent with it.

We are, therefore, convinced that Appellant did not perceive any suicide risk at the time of the offense.[2] Clearly, Appellant was genuinely concerned about his wife and marriage. These concerns motivated him. His motives, however, do not raise a defense under R.C.M. 916(h) or cause us to question the credible evidence of Appellant's specific intent to shirk important service onboard the AQUIDNECK. We are also convinced that the Government proved all the other elements of the offense. Accordingly, Assignment I is rejected.

Assignment II asserts identical defects in the missing movement charge and is similarly rejected.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved and partially suspended below, are affirmed.

Chief Judge BAUM and Judge McCLELLAND concur.



For the Court,

Jane R. Lim
Clerk of the Court

---

[2] We do not address Appellant's argument that such a risk, if Appellant had perceived it, could raise a duress defense.