UNITED STATES, Appellee

v.

JAMES O. WILLINGHAM, Corporal, U. S. Army, Appellant

2 USCMA 590, 10 CMR 88

No. 1969

Decided May 29, 1953

Lt Col George M. Thorpe, U. S. Army, and 1st Lt Michael E. McGarvey, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, and 1st Lt Robert A. Forman, U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

Accused was tried by general court-martial on two specifications for desertion in violation of Article 85, Uniform Code of Military Justice, 50 USC § 679. The specifications alleged absence from the Enlisted Replacement Center (Pipe Line), 6217 Area Service Unit at Fort Lawton, Washington, from January 3, to January 15, 1952, with intent to shirk important service, and absence from the same unit from January 27, 1952, to June 3, 1952, with intent to remain away permanently. He was found guilty as charged and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for five years. The convening authority approved and the Army board of review

590

affirmed. We granted accused's petition upon the sole issue of whether the evidence is sufficient to support the findings on the specification charging intent to shirk important service.

The issue in the instant case is similar to that presented in United States v. Taylor (No. 1454), 9 CMR 19, decided April 15, 1953, and counsel for both parties have adopted the arguments in the briefs in that case to support their contentions here advanced. In that decision we held a point of embarkation for duty in the Far East Command is important service within the meaning of the punitive article on desertion. The only remaining issue of importance is whether the evidence established that accused knew of his transfer for shipment to the Far East. If he did, then the court-martial was warranted in finding that he deserted to avoid that assignment.

On December 14, 1951, accused was a member of the Headquarters and 15th Training Company, 4th Engineer Battalion, located at Fort Belvoir, Virginia. On that date Special Orders Number 261 issued by the Headquarters at Fort Belvoir transferred him to Fort Lawton Personnel Center at Seattle, Washington, for January shipment to the Far East Command. The orders directed that he be attached to a processing organization two days prior to his departure date and at the latter time he proceed from Fort Belvoir on December 22, 1951, and arrive at Fort Lawton no later than January 3, 1952. He was granted eight days' delay en route and he must have furnished .headquarters with information as the order shows his mailing address while on leave. In addition the order shows he elected to receive his travel allowance of six cents per mile in cash and that he would be responsible for securing his own transportation from point of departure to point of destination. Morning report entries show that accused left Fort Belvoir on the date prescribed in the order; that he was absent without leave on January 3, 1952; and. that on January 15 he was apprehended in the vicinity of Fort McPherson, Georgia. Special Orders Number 18 from Fort McPherson dated January 22, 1952, show that accused was without sufficient funds to proceed to his proper station and his travel to Fort Lawton, Washington, was ordered pursuant to regulations which authorize the costs to be charged against the enlisted man. Morning report entries at the Replacement Center at Fort Lawton show accused was absent on January 27. By stipulation it was established that accused was apprehended by civilian authorities at Asheville, North Carolina, on June 3, 1952.

Again we are confronted with the argument that the evidence fails to show that accused had knowledge of his pending shipment overseas and that, therefore, he could not have intended to shirk the assignment. Here, as in the Taylor case, supra, the evidence adduced by the prosecution is undisputed and the sole question is: Does it permit the court-martial reasonably to find that accused was aware of the contents of his transfer order?

The court-martial could find that he was on post at Fort Belvoir when the special orders showing his assignment to Fort Lawton for January shipment overseas were issued; that he was there for at least eight days after it was published; that regulations require that he be furnished a copy of the orders; that there is no contention that this procedure was not followed; that accused furnished a leave address; that he expressed a desire to obtain his travel allowance in cash and spent two days being outfitted and processed for shipment; that he left Fort Belvoir on the date provided in the orders; and that he had no other authorization to leave that station. In addition, his failure to report to Fort Lawton is shown by competent evidence and when he was apprehended and furnished transportation a second time he repeated the first performance and failed to report. The record seems to us to present a fairly substantial case that the accused did not intend to see service in a combat area.

There being no justifiable issue in this Court about the second specifica-

tion, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROS-MAN concur.