UNITED STATES, Appellee

v

CHARLES R. COOLEY, Private, U. S. Marine Corps, Appellant

16 USCMA 24, 36 CMR 180

*Lieutenant John P. Meade,* USNR, argued the cause for Appellant, Accused.

*Lieutenant Colonel Daniel F. McConnell,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

FERGUSON, Judge:

The accused stands before us convicted of sleeping on post and failure to obey a lawful order, in violation of Uniform Code of Military Justice, Articles 113 and 91, 10 USC §§ 913, 891. His approved and affirmed sentence extends to bad-conduct discharge, forfeiture of $70.00 per month for six months, and confinement at hard labor for six months. We granted his petition for review upon the specified issue whether the president's instructions to the court on the defense of physical incapacity were prejudicially erroneous.

Suffice it to say that the evidence, including the accused's own testimony, indicates that, on September 18, 1964, he was found sleeping on post, after having been placed on duty as a sentinel. It further establishes that, on December 22, 1964, he was ordered by a superior noncommissioned officer to report to work at the motor pool. Prior to doing so, accused entered his barracks to change his clothing. While lacing up his boots, accused fell asleep and did not comply with the order.

In defense, Cooley alleged he was, by reason of a narcoleptic condition, physically incapable of remaining awake. He adduced evidence from various witnesses to establish he fell asleep, without apparent reason, while on duty, in class, or in his barracks. Normal measures to insure his wakefulness did not suffice. Indeed, on one occasion, he fell asleep while standing up during the battalion commander's inspection. He received medical attention, and a drug prescribed for his use was of great assistance. The physician who attended him testified that accused's history, symptoms, and response to treatment would favor a diagnosis of narcolepsy, but due to the nature of the disease, and lack of other symptoms, it was impossible to reach a firm conclusion on the matter. He defined the condition as one "which is characterized by episodes of uncontrollable drowsiness," causing the individual involved to fall asleep suddenly.

At the conclusion of the case, the president of the court gave the following advice regarding accused's defense:

"The defense has introduced evidence in this case designed to show that at the time of the offense alleged in Charge I, the accused was physically unable to remain awake on his post. You are advised that if the accused was in fact physically unable to remain awake on post, his failure to remain so awake is excusable. *Physical inability, however, is a matter of degree, and it does not constitute a defense unless the accused's failure to remain awake was reasonable in light of the fact and extent of the ailment, the relation of that ailment to the task imposed, and any other revelant [sic] circumstances."* [Emphasis supplied.]

The same instruction was repeated with reference to the effect of the accused's alleged condition on his ability to comply with the order to report to the motor pool.

There is no doubt the evidence before the court-martial placed in issue the question of accused's ability to remain awake in light of the condition from which he was allegedly suffering

and, thus, properly to perform his duty as a sentinel and to comply with the order which he had been given. In its brief, the Government seemingly contends for a contrary conclusion, but its arguments go to the weight of the proof. And, as we have said before, it is not the function of this Court, in determining whether an issue is raised, to weigh the evidence and resolve all conflicts against the accused. United States v Black, 12 USCMA 571, 31 CMR 157. We need only find sufficent evidence in the record to place the matter reasonably in issue. The record here rises to that standard.

Turning to the instructions, the Government argues they are correct in applying a standard of reasonableness to the accused's failure to remain awake in light of his supposed ailment. In so doing, it relies upon our decisions in United States v Heims, 3 USCMA 418, 12 CMR 174, and United States v King, 5 USCMA 3, 17 CMR 3. Neither case supports the Government's position when applied to the situation here presented.

In United States v Heims, supra, the question was whether the evidence placed in issue the defense of physical inability to comply with an order to tie sandbags. Accused was suffering from an injury to the hand. The proof conflicted as to whether such would prevent him from complying with the order. In measuring whether physical incapacity was a defense at all, we said, at page 420:

". . . Incapacity, of course, may be—to some extent, at least—a matter of degree. In the case of a soldier directed to dig a ditch, would he—to escape responsibility for disobedience by reason of some physical shortcoming—be required to show, say, the loss of both hands? Certainly not. Inability in such a setting must, we think, be weighed in the balances of reasonableness. This approach would of necessity require a consideration, not only of the fact and extent of the injury, but as well of its relation to the task imposed, or other subject matter of the order, together with additional relevant circumstan-

ces, if any. Whether one may—in law and fact—be physically unable to comply with an order will vary somewhat, we believe, with the pressing nature of the circumstances involved. In view of this essential element of reasonableness, it seems impossible to formulate a general rule for application to all cases. Perforce each must rest largely on the conclusions of the triers of fact, reached after a consideration of all of the evidence presented, together with the realities of the situation as evaluated by rational military persons, and against a background of the transaction's total setting. Because of the stern necessity for preserving discipline in the armed services, the proper application of this test of moderation must include not merely the question of whether the accused, under all of the circumstances, acted reasonably, but in addition, whether the balance of his judgment in the premises *was clearly demonstrable*— only a difference in degree perhaps, but a selective and important one."

In the *King* case, supra, the accused refused to obey an order to return to his position allegedly because he was suffering from frostbitten feet. Again, the issue before us was whether the evidence fairly raised the defense. Once more, we adverted to the standard of reasonableness to be applied in judging whether the accused refused to obey the order because of his injuries. In finding the matter in issue and, thus, requiring instructions, we said:

". . . In this connection it must be remembered that, unlike the court-martial, we are not concerned with the credibility of witnesses nor the weight to be accorded their testimony. Rather—in view of the principle enunciated in the Heims case—we are required to determine whether, as a matter of law, the balance of the accused's judgment with respect to physical incapacity was sufficiently demonstrated by the record as to raise that defense."

Both these cases involved a disobedience of orders because of injuries, and both hold that there must be some

reasonable relationship between the extent of the accused's disabilities and his inability, because of them, to obey the orders directed to him. As Judge Brosman picturesquely pointed out, in United States v Heims, supra, it was not necessary to find accused had lost both his hands in order to justify his refusal to dig a ditch. The question to be determined was simply one of reasonable justification for the refusal, which would augar against the existence of the necessary element of willfulness there involved. The case, however, is different when one's physical condition is such as actually to prevent compliance with the orders or, as here, to cause the commission of the offense. Upon such a showing, the question is not one of reasonableness *vis a vis* willfulness, but whether the accused's illness was the proximate cause of his crime.

That is the situation here. The accused adduced evidence which, if believed, indicated he suffered from a physical condition which rendered it impossible for him to stay awake. Yet, to fall asleep as a sentinel was, in itself, an offense, and, in like manner, to fail to comply with an order by falling asleep, was also a crime. The case is not one of balancing refusal and reason, but one of physical impossibility to maintain the strict standards required under military law. In such a situation, the accused is excused from the offense if its commission was directly caused by his condition, and the question whether he acted reasonably does not enter into the matter.

The president's instructions, however, required Cooley's failure to remain awake to be reasonable, even though it was dependent upon the existence of a disease over which he had no control. In the case of such a condition as this, the standard used to govern accused's defense was too rigid, and the court's inquiry should have been limited to whether the illness rendered it impossible for the accused to remain awake as a sentinel and to comply with the order to report. As it was not so unconditionally submitted, there is a fair risk of prejudice to Cooley's substantial rights. The findings of guilty must, therefore, be set aside.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.