UNITED STATES, Appellee,

v.

James L. SMITH, Private, U. S. Army, Appellant.

No. 33,804.
SPCM 11893.

U. S. Court of Military Appeals.

Feb. 13, 1978.

Captain Richard A. Pearson argued the cause for Appellant, Accused. With him on the brief were Colonel Robert B. Clarke, Lieutenant Colonel John R. Thornock, and Major Benjamin A. Sims.

Major Steven M. Werner argued the cause for Appellee, United States. With him on the brief were Colonel Thomas H. Davis and Captain William C. Kirk.

OPINION

COOK, Judge:

A special court-martial consisting of a military judge alone convicted appellant of

missing the movement of his military unit through neglect, disrespect toward a superior commissioned officer, willful disobedience of a command from a superior commissioned officer, and feigning an injury to avoid physical fitness training, in violation of Articles 87, 89, 90, and 115, Uniform Code of Military Justice, 10 U.S.C. §§ 887, 889, 890, and 915, respectively. The Court of Military Review disapproved the findings of guilty as to the charge of missing movement but otherwise approved the findings and sentence.

Appellant submits that the evidence is insufficient to sustain the findings of guilty of feigning an injury to avoid physical fitness training on October 3, 1975, and willfully disobeying a command of his company commander to perform physical fitness training on the same date. Specifically, he asserts the evidence does not prove beyond a reasonable doubt that he was feigning an injury and was capable of complying with the command. *See United States v. Cooley,* 16 U.S.C.M.A. 24, 36 C.M.R. 180 (1966). He further submits that the command was illegal as it was, in effect, an order to incriminate himself, i. e., if he complied with the order he would necessarily demonstrate his claim of injury was untrue.

Captain Ronayne, the company commander, testified as follows:

On the morning in question, Private Smith did not have a sick slip. He did not have a physical profile, so he was directed, first by my First Sergeant, and then by me to perform physical training. He refused to perform physical training and said that he had hurt his—his ankle the previous night. I asked him at that point why he hadn't made known his condition to his NCO supervisors and got the sick slip as he was supposed to. He ah, indicated that he just didn't, but the ankle was extremely sore and extremely painful and that it would be physically impossible for him to do PT.

Regarding the nature of the injury, Captain Ronayne noted that although the appellant originally limped on the left leg, he shifted to limping with the right leg at some point during the incident. On further examination, Captain Ronayne testified that when ordered to perform physical fitness training with the unit, appellant was "sitting by the First Sergeant to [sic] PT formation."

Appellant was subsequently taken to the medical center for examination. He was examined by Warrant Officer Mitchell. Mitchell testified he had been awarded an associate bachelor of science degree after completing a 2-year training program as a physician's assistant and he had 23 years experience in the medical field. He examined appellant's right ankle, as the appellant complained of pain in this ankle. As to the nature of the examination, the witness stated the following:

[O]n examination I looked for swelling, I didn't find any. I looked for any grating of the bone, which I didn't find any. I looked for discoloration, I didn't find any. And I looked for limitations on movements of the joint, which I didn't find any. And I compared it with the other foot, to see if they were the same, and they were. And we looked for—I checked to see if he had circulation and whether the circulation was the same as the other foot, which I found it was. And I checked to see if he had any nerve damage, and was it equal to the other foot and it was. And I checked to see if he had good flexion or up and down [movement] of the foot, and I compared it to the other foot and it was the same. I didn't find any abnormalities there. And then I got an x-ray of the ankle, and the radiologist read the x-rays "negative".

Upon examination by the defense counsel, Mitchell acknowledged that he had a previous encounter with the appellant; he had destroyed a physical profile relating to the appellant's inability to shave, but the profile had been reinstated by the Inspector General.[1] He also acknowledged that if the appellant had received a "soft tissue" injury

---

1. The appellant was apparently suffering from a condition characterized by ingrown facial hair whereby he was permitted to abstain from shaving for a specified period.

such injury may not show externally and one method of detecting this type of injury was to probe into the affected tissue. Although he did not use this technique on the appellant, he did manipulate the ankle without any expression of pain by the appellant.

Appellant testified in his own defense and asserted the incident in question occurred in September rather than on October 3. He also related other incidents which were apparently the subject of other charges not relevant to the present discussion. However, he readily acknowledged that in view of the lapse of time, he could be confused as to the various dates involved. In any event he asserted that when his company commander told him to perform physical fitness training, he informed his commander he had injured his ankle.

■ We first address the issue relating to the sufficiency of the evidence. Appellant was examined by a physician's assistant with 23 years of experience. Although the appellant does not contest the fact that this witness was qualified to testify as to the results of his examination, he submits that in the absence of an examination by a medical doctor, the Government failed to prove beyond a reasonable doubt that the appellant was not injured. We disagree.

As noted earlier, numerous factors were considered by the physician's assistant for the purpose of ascertaining an abnormality in, or with, accused's ankle. All of the factors were consistent with the absence of any abnormality.[2] Appellant argues that because the witness did not probe the affected area the examination did not rule out the possibility of a disabling "soft tissue" injury. However, the witness did testify that he manipulated the ankle without any expression of pain by the appellant. Furthermore, Captain Ronayne testified that appellant's limp, while originally appearing on the left side, shifted to the right side during the incident.

In *United States v. Taylor*, 21 U.S.C.M.A. 220, 222, 44 C.M.R. 274, 276 (1972), we set out the standard by which to judge the sufficiency of the evidence to support a finding of guilty as follows:

The test to be applied in determining the sufficiency of the evidence is whether there is, in the record, some competent evidence from which the members of the court-martial, or the military judge in a trial by judge alone, could find, *beyond a reasonable doubt*, the existence of every element of the offense charged. It is axiomatic that a conviction cannot be sustained on the basis of suspicion or surmise. *United States v. Papenheim*, 19 U.S.C.M.A. 203, 41 C.M.R. 203 (1970), and cases cited at page 205. Cf. *United States v. Lyons*, 11 U.S.C.M.A. 68, 28 C.M.R. 292 (1959).

*Accord, United States v. Brown*, 3 M.J. 402, 403 (C.M.A.1977).

Our view of the foregoing evidence convinces us there was sufficient evidence from which the military judge, as the trier of fact, could reasonably conclude that every element of the offense of feigning an injury was established beyond a reasonable doubt. A finding that appellant was physically able to comply with the command is supportable by the same evidence and, therefore, requires that we sustain the judge's finding of guilt of willful disobedience. Accordingly, we resolve the sufficiency issue against the appellant.

■ We turn now to whether the command of the company commander was lawful. The parties have primarily focused on whether Captain Ronayne suspected the appellant of the commission of a crime and was, therefore, obligated under Article

2. The witness considered a radiographic report during his examination of the appellant and this report was apparently admitted on the basis it was an official record. While the official nature of the document does not appear to have been adequately demonstrated on the record, we perceive no prejudice as an expert witness may consider reports of others without admitting such documents into evidence. Paragraph 138e, Manual for Courts-Martial, United States, 1969 (Revised edition); *see United States v. Walker*, 12 U.S.C.M.A. 658, 31 C.M.R. 244 (1962); *United States v. Heilman*, 12 U.S.C.M.A. 648, 31 C.M.R. 234 (1962).

31(b)[3] to advise him preliminarily of the right to remain silent—here translated to mean the right to refuse to obey the command. The Government asserts that the record contains no evidence that Ronayne was informed of the appellant's refusal to perform physical fitness training because his ankle was injured prior to the issuance of the command and, therefore, could not have suspected him of any wrongdoing. The defense has attempted to paint a picture of knowledge. Our examination of the record does not reveal any testimony to indicate that the commander was so informed. However, that does not determine the matter. Suspicion that appellant had committed an offense is only relevant to whether the commander was required to warn the appellant under Article 31(b) prior to issuing his command. If compliance with the commander's command would have tended to incriminate the appellant, under Article 31(a),[4] the appellant was entitled to refuse compliance. *United States v. Ruiz*, 23 U.S.C.M.A. 181, 48 C.M.R. 797 (1974). We must, therefore, consider whether Ronayne's command came within the proscription of Article 31(a) that "[n]o person subject to" the Code "may compel" another "to incriminate himself."

Appellant urges, for the first time, comparison of his case with others in which this Court has held that an order was illegal because in violation of Article 31. Most of the cases are inapposite because they deal with the requirement for preliminary advice prescribed by subdivision (b) of the Article. *United States v. Pyatt*, 22 U.S.C.M.A. 84, 46 C.M.R. 84 (1972); *United States v. Nowling*, 9 U.S.C.M.A. 100, 25 C.M.R. 362 (1958); *see also United States v. Cuthbert*, 11 U.S.C.M.A. 272, 275, 29 C.M.R. 88, 91 (1960) (Ferguson, J., dissenting), approved in *United States v. Kinane*, 24 U.S.C.M.A.

120, 122 n. 1, 51 C.M.R. 310, 312, 1 M.J. 309 (1976). Others involved subdivision (a), which is at issue, but in all except one, *Ruiz, supra*, the circumstances surrounding the issuance of the order made it apparent that the order had been given to obtain evidence which would have tended to implicate the accused in a crime. We turn, therefore, to consider *Ruiz*.

In *Ruiz*, the accused was enrolled in a drug rehabilitation program. Enrollees were subject to periodic follow-up urinalysis. At one such occasion the accused refused to submit a sample of his urine. He was escorted to the company commander who ordered him to furnish a sample for the required analysis. The accused refused to comply on the ground that if the urinalysis proved positive that result would incriminate him. Persistence in his refusal led to a charge of, and conviction for, willful disobedience of the order. On accused's appeal to this Court, the Government sought to distinguish the case from those in which orders had been determined to violate Article 31(a) on the ground that "the purpose of the order was to obtain evidence against the accused for use in a court-martial proceeding." *Id.* at 182, 48 C.M.R. at 798. The Court's response to that argument is opposed to the contentions of the appellant here. The Court said:

Aside from cases in which the order is directed towards producing evidence for actual use against the accused in a criminal proceeding, there are those in which, regardless of the order's purpose, the accused knows that compliance will in fact produce incriminating evidence. This is such a case. Here, the accused knew and informed Major Davis that he would not comply with the order because the ensuing urinalysis would prove positive and

---

**3.** Article 31(b), Uniform Code of Military Justice, 10 U.S.C. § 831(b), provides:

No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

**4.** Article 31(a), UCMJ, 10 U.S.C. § 831(a), sets forth the following:

No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

indicate he had been using drugs. Thus, despite the Major's purpose in giving the order, the accused was entitled to rely on his Article 31 protection and to refuse obedience to it.

*United States v. Ruiz, supra* at 182–83, 48 C.M.R. at 798–99.

Here, as in *Ruiz*, the appellant knew that regardless of the purpose of the order his compliance with it could "produce incriminating evidence" against him but unlike *Ruiz*, the appellant did not say that he would not comply with the order because his compliance would tend to incriminate him.

On its face the order in issue appeared to require a routine military duty. The appellant's unit was engaged in physical training but the accused was not. As indicated earlier, the company commander had no reason to suppose that an order to the accused to participate in an activity required of him would tend to connect him with a crime. Without a declaration by appellant of the reason for refusing to comply with the order, no one not privy to his knowledge could anticipate that compliance would tend to incriminate him. In this regard the situation is somewhat analogous to that of a person subpoenaed as a witness before the grand jury. The prosecutor and the members of the grand jury may not know or have any reason to suspect that a question asked the witness might tend to incriminate him. Necessarily, the witness would have to assert his right to remain silent as a ground for his refusal to answer or have it appear that this silence was willfully and legally unjustified. As the appellant did not assert any right to refuse compliance with an order that had all the indicia of legality, he cannot belatedly claim that his failure to comply was prompted by his belief that compliance would tend to incriminate him. In the circumstances of this case we conclude that Article 31(a) was not operative.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge FLETCHER concurs in the result.

PERRY, Judge (concurring in the result):

▮▮▮ As to the first issue, I agree with Judge Cook's opinion concluding that there is some competent evidence in the record from which the factfinder could find the existence, beyond a reasonable doubt, of every element of the offense in question. As to the second issue, I do not believe that a serviceperson may ignore *every* order on the ground that to comply might be self-incriminating. *United States v. Ruiz*, 23 U.S. C.M.A. 181, 48 C.M.R. 797 (1974), is not determinative of the question here, one way or the other, for the order there involved was not one requiring the accused to perform what otherwise simply was his routine military duty. The appellant is a soldier in the United States Army and, as such, may be expected at the least to perform his normal functions. An armed force cannot run on less.