UNITED STATES

v.

**David W. McDOWELL, 465 35 4079,
Lance Corporal (E–3), U.S.
Marine Corps Reserve.**

**NMCM No. 91 1762.**

U.S. Navy–Marine Corps Court
of Military Review.

Sentence Adjudged 23 Oct. 1990.

Decided 31 Jan., 1992.

LT James P. McFadden, JAGC, USNR,
Appellate Defense Counsel.

LT Kevin S. Anderson, JAGC, USNR,
Appellate Government Counsel.

Before STRICKLAND, Senior Judge,
and ORR and MOLLISON, JJ.

ORR, Judge:

Contrary to his pleas, the appellant was found guilty by a military judge sitting alone of three specifications of unautho-

rized absence under Article 86, Uniform Code of Military Justice (U.C.M.J.), 10 U.S.C. § 886. On appeal to this Court, the appellant argues that this special court-martial lacked *in personam* jurisdiction over him because these offenses were committed after his enlistment had expired.

The appellant enlisted in the U.S. Marine Corps Reserves on 18 February 1983 for 6 years and was called to active duty on 1 September 1986 for 2 years. Four months before his active duty obligation was due to expire, he received a notice from the Commandant of the Marine Corps that he had been selected for continuation on active duty for an additional 3 years as part of the Reserve Full–Time Support (FTS) Program. The notice referred the appellant to certain paragraphs of a Marine Corps Order which described the conditions of service and, in the following paragraph, stated: "If an extension/reenlistment in the Marine Corps Reserve is needed to fulfill your new FTS orders, it must be accomplished prior to the orders being issued." The notice then asked the appellant to sign the memorandum at the bottom of the page and to return the letter within 30 days as notice of his acceptance of the continuation. The appellant so signed the memo accepting the conditions of the assignment; however, the appellant never signed an extension or reenlisted. Nevertheless, two months before the appellant's initial active duty obligation was to expire, the Commandant issued orders continuing him on active duty until 31 August 1991. The appellant continued to perform his duties as assigned and receive pay past 31 August 1988, past 17 February 1989, and until the unauthorized absences he was convicted of occurred in July and August 1989. At no time does it appear that the appellant objected to his continuation on active duty.

The appellant argued at trial and again before this Court that the court-martial did not have jurisdiction to prosecute him for these offenses, which occurred entirely after his enlistment contract had expired. The appellant appears to concede, however, that he did not object to being retained past his date of separation and that the Government did not have to take any affirmative

steps to preserve its jurisdiction over him. *United States v. Fitzpatrick*, 14 M.J. 394 (C.M.A. 1983). In *Fitzpatrick*, the Court of Military Appeals stated three situations where the Government would not lose jurisdiction. As to the second of these three, the Court stated: "[T]he Government loses jurisdiction to try a servicemember unless ... after the member's date of separation, he does not object 'to his continued retention'...." 14 M.J. at 397.

■ Despite this language, the appellant argues further that 10 U.S.C. § 672(d) does not give the Commandant (as a designee of the Secretary of the Navy) the power to extend the servicemember beyond his or her enlistment contract without the servicemember's consent. Therefore, we are urged to overturn the appellant's conviction since the Commandant lacks the authority to unilaterally extend the appellant on active duty beyond his separation date. This argument ignores the fact that the appellant signed the notice accepting his continuation on active duty, continued to perform his duties and draw his pay, and never objected to his continued service. If that is not actual consent, it certainly is implied consent, and we find the appellant comes within the scope of the second of the three scenarios described by the Court of Military Appeals in *Fitzpatrick*. Article 2(c), Uniform Code of Military Justice, 10 U.S.C. § 802(c); Para. (2)(B)(i), Discussion, Rule for Courts–Martial 202(a); *see also United States v. Poole*, 30 M.J. 149 (C.M.A. 1990) (no "constructive discharge" when a servicemember is retained on duty beyond the end of an enlistment).

■ Having jurisdiction over the appellant may resolve the threshold question argued by the appellant in his assignment of error, but another fundamental problem is apparent from the record of trial. The only evidence offered by the Government on the merits was two exhibits: Prosecution Exhibit (PE) 1, a copy of the appellant's enlistment contract; and, PE 2, a page entitled "Offenses and Punishments (NAVMC 118–12)" from the appellant's service record book. Only the latter contains

specific information concerning the appellant's absences, and all three entries concerning the inception of these absences report the date the entry was made and the fact that the appellant was absent in the following format: "UA (AWOL) fr this org since.... Abs rpt by RUC 03007 on UD ... dtd...."[1] Although these entries are in conformity with the administrative requirements of the applicable Marine Corps directive for making such notations on this page of the appellant's service record book, nowhere in this exhibit or in any other Government evidence is the organization of the appellant at the time of any of his absences reported or identified beyond the "RUC" of the unit reporting the absence. Section 4014.2b(3), Marine Corps Order P1070.12F of 22 February 1990, Subj: MARINE CORPS INDIVIDUAL RECORDS ADMINISTRATION MANUAL.

In each of the specifications where the appellant was found guilty, it is alleged that the appellant was absent from his unit, Marine Aircraft Group 41 (hereinafter "MAG 41"), Fourth Marine Aircraft Wing, located at Naval Air Station, Dallas, Texas. There is no evidence in the record of trial, however, establishing that essential element of these offenses. Manual for Courts–Martial, United States, 1984, Part IV, ¶ 10b(3)(a); *United States v. Bowman,* 21 U.S.C.M.A. 48, 44 C.M.R. 102 (1971); *United States v. Foster,* 45 C.M.R. 475 (A.C.M.R.1972); *see also United States v. Walls,* 1 M.J. 734 (A.F.C.M.R.1975) (variance in proof of accused's unit fatal because naming a particular organization in the pleading both identifies and limits the offense charged).

The Government argues that we should either infer from the record that the military judge used his common experience to infer that "RUC 03007" corresponds to MAG 41 and was the unit to which the appellant was attached at the time of his absences or take judicial notice of the Marine Corps orders that: (a) define a "RUC" as a reporting unit code identifying a unit, activity, or sub-unit and require the use of a unit diary, Paragraphs 1109, 2001–2003,

Marine Corps Order P1080.35H of 19 March 1990, Subj: PERSONNEL REPORTING INSTRUCTIONS MANUAL; (b) require a unit diary entry by a parent command to report an unauthorized absence by a member of that command, Paragraph 5001, Marine Corps Order P5800.8B of 24 December 1984, Subj: Marine Corps Manual for Legal Administration; and, (c) establish the reporting unit code for MAG 41 as "03007", Chapter 6, page 6–13, Marine Corps Order P1080.20J of 28 September 1987, Subj: Joint Uniform Military Pay System/Manpower Management System Codes Manual. None of these orders was offered in evidence by the Government at trial, and the military judge did not state that he was taking judicial notice of them.

■ As to the first of these arguments, we are not inclined to draw inferences upon inferences or otherwise presume that the military judge took judicial notice of these orders. *United States v. Williams,* 3 M.J. 155 (C.M.A.1977). As to the latter argument, we have stated:

> While this Court has fact-finding powers, Article 66(c), UCMJ, 10 U.S.C. § 866(c), and Mil.R.Evid. 201(f), we are not prepared to fill in evidentiary gaps by noticing an essential fact for the first time on appeal. An accused is entitled to know at the time of trial upon what evidence he is being convicted.

*United States v. Wootton,* 25 M.J. 917, 919 (N.M.C.M.R.1988) (citing *Garner v. Louisiana,* 368 U.S. 157, 173, 82 S.Ct. 248, 256, 7 L.Ed.2d 207 (1961)). Although Military Rule of Evidence 201(f) indicates that judicial notice may be taken at any stage of the proceeding, Military Rule of Evidence 201A provides: "The military judge may take judicial notice of domestic law. Insofar as a domestic law is a fact that is of consequence to the determination of the action, the procedural requirements of Mil.R.Evid. 201—except Mil.R.Evid. 201(g)—apply." Mil.R.Evid. 201A(a). Rule 201 also provides: "The parties shall be informed in open court when, without being requested, the military judge takes judicial notice of an adjudicative fact essential to establish-

---

**1.** A copy of PE 2 is attached as an appendix to this opinion.

ing an element of the case." Mil.R.Evid. 201(c). In a recent decision involving the offense of false swearing, we declined to take judicial notice, where the military judge had not done so at trial, of a Navy Department directive authorizing Naval Investigative Service (NIS) agents to administer oaths by stating: "As an intermediate appellate court, we may not judicially notice SECNAVINST 5520.1B as authorizing NIS agents to administer oaths because that instruction as domestic law is a fact of consequence to the determination of the case...." *United States v. Hill*, 31 M.J. 543, 544 (N.M.C.M.R.1990). Likewise, we may not judicially notice MCO P1070.12F, MCO P5800.8B, and MCO P1080.35H as defining "RUC 03007" to identify either MAG 41 or the command required to report the unauthorized absences of its assigned personnel in the manner reflected in PE 2 because those orders are facts of consequence to the determination of this case.

■ The Government also urges as an alternative that we rectify the trial court's failure to take judicial notice by ordering a revision proceeding or a hearing under *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), so that the military judge could take judicial notice of the relevant facts. In support of this position, the Government cites, *inter alia*, *United States v. Mead*, 16 M.J. 270 (C.M.A.1983), where a conviction was sustained even though the military judge first took judicial notice of the U.S. Navy Regulation prohibiting the wrongful possession, transfer, or sale of marijuana at a proceeding in revision directed by the convening authority for that purpose 5 weeks after trial. This alternative was also mentioned by the Court of Military Appeals in a subsequent case where the same U.S. Navy Regulation was not judicially noticed:

Because appellant was tried by a military judge rather than by court members, the failure to take judicial notice of the Navy Regulation could have been rectified in a revision proceeding. *See United States v. Mead* .... Likewise, the Court of Military Review could have ordered a *DuBay* hearing so that a trial judge could take judicial notice of relevant facts.

*See United States v. DuBay* ...; *see also United States v. Williams*, 14 M.J. 428 (C.M.A.1983) and 17 M.J. 207 (C.M.A. 1984). Perhaps the Court of Military Review could itself have taken judicial notice of the overlooked Regulation. *United States v. Brown*, 18 M.J. 360, 361 (C.M.A.1984). Whatever validity these suggestions may have, there are no cases other than *Mead* where such an alternative has actually been employed. In *Brown*, the issue was not before the Court of Military Appeals. Although a *DuBay* hearing was initially ordered by the Court of Military Appeals in *Williams* to establish certain jurisdictional facts, the Court ultimately declined to use either judicial notice or the results of the *DuBay* hearing because more than questions of law were involved in resolving the jurisdictional question and that question should have been submitted to the members. 17 M.J. at 215. More recently, the Court of Military Appeals again declined to rectify the Government's failure to establish jurisdiction under the Assimilative Crimes Act, 18 U.S.C. § 13, through a *DuBay* hearing in a trial before members. *United States v. Irvin*, 21 M.J. 184 (C.M.A.1986). Nevertheless, the Court did mention in a footnote that its "decision in *United States v. Mead* ... would seem to imply that even after the conclusion of the original trial, the Government may be allowed to demonstrate the existence of facts which are subject to judicial notice." 21 M.J. at 187 n. 8.

Even more recently, however, this Court has declined to use such alternative methods to determine areas of exclusive or concurrent Federal jurisdiction in a case where the military judge failed to advise the appellant of that jurisdictional element in several offenses to which the appellant had pled guilty and failed to elicit a sufficient factual basis to support the plea. *United States v. Geary*, 30 M.J. 855 (N.M.C.M.R. 1990).

We find significant qualitative differences between the esoteric orders in question before us now and the well-known prohibition from U.S. Navy Regulations at issue in *Mead* and *Brown*. Consequently,

we decline to perfect the Government's evidence in the case now before us.

Accordingly, the findings of guilty and the sentence are set aside, and the charges are dismissed.

Senior Judge STRICKLAND concurs.

MOLLISON, Judge (concurring):

I write to note my approach to the disposition of the jurisdictional issue because I believe the *Fitzpatrick* analysis has been overtaken and simplified by *Poole*. The appellant was lawfully called to active duty in the U.S. Marine Corps Reserve and had never been released from active duty. Therefore, he was subject to the Uniform Code of Military Justice. Article 2(a)(1), (c), UCMJ, 10 U.S.C. § 802(a)(1), (c); *United States v. Ernest*, 32 M.J. 135 (C.M.A. 1991); *Poole*, 30 M.J. at 151; *United States v. Cline*, 29 M.J. 83 (C.M.A.1989), *cert. denied*, 493 U.S. 1045, 110 S.Ct. 842, 107 L.Ed.2d 837 (1990). Were an analysis of the circumstances of his extension necessary, and I believe it is not, the fact is the appellant was ordered extended on active duty and consented to same notwithstanding the apparent absence of a formal extension agreement or reenlistment contract.

724

  

## OFFENSES AND PUNISHMENTS

890706. UA (AWOL) fr this org since 0701, 890705. Abs rpt by RUC 03007 on UD 00121 dtd 890707.

*Bydir*

890709. Fr UA (AWOL) at 1400, 890708 when the Marine surr at this org. Termination of abs rpt by RUC 03007 on UD 00123 dtd 890709.

*Bydir*

890719. UA (AWOL) fr this org since 0846, 890715. Abs rpt by RUC 03007 on UD 00128 dtd 890719.

*Bydir*

890811. Fr UA (AWOL) at 1545, 890807 when the Marine surr at this org. Termination of abs rpt by RUC 03007 on UD 00145 dtd 890811.

*Bydir*

890811. UA (AWOL) fr this org since 0701, 890809. Abs rpt by RUC 03007 on UD 00145 dtd 890811.

*Bydir*

890913. UA(AWOL) fr this org since 0701, 890809. Declared deserter this date as of 0701, 890809 and dropped from the rolls this org on RUC 03007 UD 00166 dtd 890913. DD 553 published this date.

*Bydir*

*900913. The mark of desertion under 890913 for the absence commencing 890809 is hereby removed as erroneous. Authority: SNM apprehended by civil authorities at 0430, 900523. DD Form 616 published 900523 .

*Bydir*

PROSECUTION EXHIBIT 2
~~for identification~~

| GOOD CONDUCT MEDAL PERIOD COMMENCES: | ORGANIZED MARINE CORPS RESERVE MEDAL PERIOD COMMENCES: | |
|---|---|---|
| MCDOWELL, David W. | 465 35 4079 | |
| NAME (Last) (First) (Middle) | SSN | |

NAVMC 118 - 12 (REV. 8-67) 0000-00-000-2805 U/I PADS OF 100
Previous editions are obsolete.

OFFENSES AND PUNISHMENTS (1070)

PROSECUTION EXHIBIT 2

(12)b