UNITED STATES

v.

**Enrique GONZALEZ, 119 68 1627, Corporal (E–4), U.S. Marine Corps.**

**NMCM 92 00058.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 25 May 1991.

Decided 26 Jan. 1994.

Hillary Richard, Civilian Defense Counsel.

LT D.P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

Capt Laulie S. Powell, USMC, Appellate Government Counsel.

Before LARSON, C.J., and WELCH and ORR, Senior Judges.

LARSON, Chief Judge:

The appellant was convicted, contrary to his pleas, by general court-martial before a military judge sitting alone of desertion with intent to avoid hazardous duty and/or to shirk important service and missing movement, in violation of Articles 85 and 87, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 885 and 887, respectively. He was sentenced to confinement for 30 months, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence but suspended all confinement beyond 20 December 1991 (3 days after the action was taken) for a period of 12 months from the date of trial.

Among other assigned errors on appeal,[1] the appellant challenges the legal and factual sufficiency of the evidence to sustain his conviction of desertion on multiple grounds, including, *inter alia,* the fact that the unit to which he was assigned did not embark for the alleged hazardous duty and important service until after he voluntarily terminated his unauthorized absence and the fact that he was ultimately found to be medically disqualified to go with his unit when it did embark. Finding no merit in these contentions, nor in any assigned error, we affirm.

## I.

The appellant was one of many Marine Corps reservists called up by executive order to support Operation Desert Shield in the Persian Gulf in response to the invasion of Kuwait by Iraqi forces in August 1990. Pros. Ex. 2; App. Ex. VIII. He was attached to Anti–Tank (TOW) Company, 8th Tank Battalion, 4th Marine Division in Miami, Florida. He initially complied with his written orders to report to his unit in Miami on 26 November 1990 for further transfer to Camp Lejeune for training for eventual deployment to Saudi Arabia to join forces with the Second Marine Expeditionary Force (II MEF). Pros. Ex. 2; Record at 61. During his brief time in Miami, the appellant

---

1. I. APPELLANT'S DESERTION CONVICTION MUST BE SET ASIDE BECAUSE IT WAS PROVED THAT HE COULD NOT HAVE PERFORMED IMPORTANT SERVICE OR HAZARDOUS DUTY AS HE WAS DETERMINED NOT FIT FOR DUTY AND NOT PHYSICALLY QUALIFIED.
II. THE DESERTION CONVICTION SHOULD BE SET ASIDE AS THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION.
III. THE SPECIFICATION OF CHARGE I IS INSUFFICIENT AS IT COMBINES A CONJUNCTIVE AND DISJUNCTIVE THEREBY RENDERING THE DESERTION CHARGE FATALLY DEFECTIVE AS A MATTER OF LAW.
IV. THE MILITARY JUDGE ERRED BY TAKING JUDICIAL NOTICE OF IRRELEVANT ACTIONS TAKEN BY THE UNITED STATES AGAINST IRAQ SUBSEQUENT TO THE CHARGED OFFENSES, THEREBY PREJUDICING THE ACCUSED.
V. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR MISSING MOVEMENT.

brought to the attention of his superiors a medical condition related to his urinary tract. He produced a note from a civilian physician to the effect that he had been treated for a urinary tract infection and a bladder neck obstruction. Def. Ex. A. He was referred to an Air Force urologist at nearby Homestead Air Force Base who examined him immediately and determined that he was fit for duty contingent upon his receiving further testing at Camp Lejeune. The physician opined that he would need to see the results of those additional tests before he declared him fit to deploy to Southwest Asia. Record at 108, 113, and 127. He did advise the appellant that he would need further testing before a proper diagnosis could be made. Record at 135.

Back at his unit, the appellant was informed by a chief hospital corpsman that he was fit for duty and was set to deploy with his unit to Saudi Arabia. Record at 82. The chief also acknowledged that the Air Force urologist had ordered further tests concerning the appellant's medical condition. He, in turn, advised the appellant that these tests would be performed at Camp Lejeune. Record at 86. When the unit assembled at Miami on 28 November to move by aircraft to Camp Lejeune, the appellant was absent without authority and did not move with his unit. Pros. Ex. 4.

The appellant surrendered to a Marine Corps office in New York City on 26 December 1990. At the same time, he presented an application for conscientious objector status in accordance with applicable departmental instructions, in which he asserted, *inter alia*, that he had been "called to active duty . . . in order to travel to Saudi Arabia to participate in an operation which calls for war" and that he "chose to leave Florida." Pros. Ex. 8. He was subsequently transferred to Camp Lejeune where his unit was still present. When his command eventually deployed to Southwest Asia in late January 1991,[2] the

appellant did not accompany it. By that time, he had been found "not physically qualified" by a medical board following a recommendation to that effect by a Navy urologist at Camp Lejeune. That recommendation was based upon the same urinary tract condition for which he had been examined at Homestead Air Force Base. Def. Ex. C. In the Navy doctor's opinion, the appellant should not have been activated at all. Record at 155. The doctor explained that this opinion was based upon his determination that the appellant required extensive further testing before his fitness for full duty could be assessed and that current medical policy guidance directed such persons to be "turned around" at the outset as a matter of expediency. Record at 157. Finally, a hearing was held before trial to determine the merits of the appellant's application for conscientious objector status and the pending recommendation of the hearing officer was to approve the application. Record at 144.

## II.

Our principal duty in this case is to determine the legal and factual sufficiency of the evidence. Article 66(c), UCMJ, 10 U.S.C. § 866(c). The standards for both determinations are set out in *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). As to factual sufficiency in particular, the test is whether, after weighing the evidence in the record of trial and making allowances for not having seen and heard the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Id.* at 325.

Desertion with the intent to avoid hazardous duty or to shirk important service is a serious offense under military law. What distinguishes it—and aggravates it—from simple unauthorized absence, and even from desertion with intent to remain away permanently, is the existence of an intent to

---

2. There is some confusion in the record of trial as to whether the appellant's unit actually deployed to Southwest Asia and participated in combat operations against Iraqi forces. The question was posed to counsel during oral argument as to whether the Government was required to prove that the appellant's unit actually engaged in hazardous duty or important service

before he could be found guilty of the offense. We have since determined that we need not decide this question. It is clear that the unit did not embark for Saudi Arabia during the appellant's absence. Whether they ultimately did deploy is irrelevant. The effect of these facts on the issue of guilt, and in particular on the specific intent element will be explored below.

abandon the unit at a time when the presence of all hands is most critically needed. *United States v. Merrow,* 14 U.S.C.M.A. 265, 34 C.M.R. 45, 1963 WL 4754 (1963). The elements of this form of desertion are:

 (1) The accused quit his unit;

 (2) The accused did so with the intent to avoid hazardous duty or to shirk important service;

 (3) The duty to be performed was hazardous or the service important;

 (4) The accused knew he would be required for such service or duty; and

 (5) The accused remained absent until the date alleged.

Manual for Courts–Martial, United States, 1984 (MCM), Part IV, ¶ 9b(2). The appellant's absence from his unit for the time period alleged is not in serious dispute.[3] His principal contentions concern elements (2), (3), and (4).

■ The specific intent element of this form of desertion cannot be proved merely by establishing (a) absence from a unit and (b) that the unit is engaged or is soon to be engaged in hazardous duty or important service. *United States v. Apple,* 2 U.S.C.M.A. 592, 10 C.M.R. 90, 1953 WL 1778 (1953). As with any intent element, the intent to avoid hazardous duty or to shirk important service is usually inferred by the fact-finder from the circumstances surrounding the absence. *United States v. Taylor,* 2 U.S.C.M.A. 389, 9 C.M.R. 19, 1953 WL 2597 (1953). It is generally enough to prove the intent element that the court determine on the basis of substantial evidence that, when the unauthorized absence began, the duty or service was imminent and as a consequence of his absence, the accused in fact avoided it or had *reasonable cause to know that he would do so.* *United States v. Shull,* 1 U.S.C.M.A. 177, 2 C.M.R. 83, 88–89, 1952 WL 1697 (1952) (emphasis added).

■ In this case, the appellant's unit did not embark to engage in hazardous duty or important service during his absence so he did not, in fact, avoid or shirk it as a consequence of his absence. Based upon the analysis in *Shull,* the real questions concerning his intent are (1) whether, at the time he left, his unit's departure was imminent, (2) whether he was aware of that prospect, and (3) whether he had reasonable cause to believe he would miss it by his absence. The facts developed at trial establish that the unit was called to activate on 16 November and the appellant was officially notified on 20 November. Pros. Ex. 2. He was directed to report to his drill site a mere 4 days later and, thereafter, to depart with the unit for Camp Lejeune on 28 November for pre-deployment training with an uncertain date for further transfer to Saudi Arabia to join II MEF. Record at 58–61; Pros. Ex. 2. The best estimate of a time for embarkation in the record was 11 December as announced by the commanding officer at a unit formation on 27 November.[4] Record at 61. Other relevant facts include the advice from the chief corpsman to the appellant that his medical condition was apparently not going to prevent his embarkation and the inoculations he received for overseas duty. Record at 82.

Putting this rapidly unfolding scenario in the vernacular, it is clear to us that, on the eve of his scheduled flight to Camp Lejeune, the appellant concluded that the train was

3. The appellant asserts that the Government's documentary evidence did not prove that his absence was from the unit alleged, citing *United States v. McDowell,* 34 M.J. 719 (N.M.C.M.R. 1992). In *McDowell,* the Court found no evidence in the record linking the documentation of absence in the accused's record to the unit alleged in the specification. In this record, we find that linkage in Prosecution Exhibits 2, 3, and 4. We are convinced beyond reasonable doubt that the appellant was attached to the unit alleged in the specification and absented himself from that unit without authority on the date alleged. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

4. The appellant's presence at that formation was not established by direct evidence. However, in view of the requirement for all unit members to be present, the absence of any indication that the appellant was marked absent for failure to attend the formation (Record at 68), and the compelling inference that the unit's ultimate date of embarkation to Saudi Arabia was a common matter of discussion and concern among unit members, we have no hesitation in concluding that the appellant was aware of this information.

moving too fast and too far down the track toward embarkation and that, if he was going to get off, he had better resort to drastic action. The appellant's own admissions in his subsequent application for conscientious objection also contribute to this conclusion. Pros. Ex. 8. Consequently, based upon the facts of record and the reasonable inferences to be drawn therefrom, we find that, when the appellant left his unit, he did so with a reasonable expectation that embarkation was imminent and that he would likely avoid it as a consequence of his absence.

The fact that his unit did not deploy within the period of his absence may be relevant to show the reasonableness of a belief that embarkation was not imminent, had that belief been entertained by the appellant. However, this factor is far outweighed by the evidence detailed above which supports the opposite conclusion. In the same manner, the fact that he voluntarily surrendered to another unit less than 30 days later is relevant to, but not dispositive of, his intent at the time he left.

██ The appellant claims that his purpose in leaving his unit was to insure that he would receive adequate medical care for his urinary problem and not to avoid hazardous duty or important service. In so doing, he confuses motive with intent. Motive is a state of mind tending to show the basis for certain behavior. *United States v. Watkins*, 21 M.J. 224 (C.M.A.), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986). It is never an element of a crime. However, it may be relevant to the issue of intent, *see Apple*, 2 U.S.C.M.A. at 593, 10 C.M.R. at 91 (accused's purpose in leaving his unit on the front line and going to the rear to check on his rotation date negated an intent to avoid hazardous duty); *United States v. Guthrie*, 12 C.M.R. 299, 1953 WL 2240 (A.B.R.1953) (accused's purpose in leaving his unit to work the family farm negated intent to shirk important service), or as circumstantial evidence of another element of the crime, such as identity, Mil.R.Evid. 404(b). Notwith-

standing its relevance to intent, an understandable or even laudable motive is never a defense to desertion as long as all the elements of the offense are clearly established. *United States v. Kim*, 35 M.J. 553 (A.C.M.R. 1992); *United States v. Gorringe*, 15 C.M.R. 882, 1953 WL 2792 (A.F.B.R.1953). The appellant's concern for proper medical care may very well have been one reason for his behavior—although the evidence suggests that his conscientious objection to war was the primary reason. However, if he actually intended to avoid embarkation by his absence for whatever underlying reason, it matters little just what, or how benign, his motivations may have been.[5] *Id.; see also United States v. Herrin*, 40 C.M.R. 960, 1969 WL 6240 (N.B.R.1969) (accused's desire to publicly demonstrate his opposition to war did not negate his intent to leave his unit permanently). The evidence is clear that the appellant specifically intended to avoid duty in the Persian Gulf and that he quit his unit in order to accomplish that objective. Pros. Ex. 8.

### III.

██ The Government was also required to prove beyond reasonable doubt that the duty to be performed by the appellant was hazardous or the service important. *United States v. Merrow*, 14 U.S.C.M.A. 265, 34 C.M.R. 45, 1963 WL 4754 (1963). At the outset, we agree with the appellant's position that the evidence is insufficient to establish that the appellant would have performed hazardous duty. Notwithstanding his status as a rifleman with a TOW company, the mere fact that his company was destined for an area of potential conflict does not prove beyond reasonable doubt that the appellant himself would have been engaged in hazardous duty. *United States v. Smith*, 18 U.S.C.M.A. 46, 39 C.M.R. 46, 1968 WL 5055 (1968). Such a conclusion, *based upon the facts as they stood on 28 November 1990*, would be speculation, clearly an inadequate

---

5. The appellant attempts to turn his medical concerns into a physical inability defense as well. Rule for Courts–Martial 916(i); *United States v. Cooley*, 16 U.S.C.M.A. 24, 36 C.M.R. 180, 1966 WL 4439 (1966). This assertion has no merit.

There is not a shred of evidence in the record to support the proposition that his medical condition made it physically impossible for him to embark with his unit to the Persian Gulf and to perform assigned duties in that environment.

basis for conviction. *United States v. O'Neal*, 1 C.M.A. 138, 2 C.M.R. 44, 1952 WL 1691 (1952).

■ We take a different view with respect to "important service." Although this term defies precise definition, it clearly consists of service that is above and beyond ordinary service. *United States v. Boone*, 1 C.M.A. 381, 3 C.M.R. 115, 1952 WL 1845 (1952). In *United States v. Thun*, 36 M.J. 468 (C.M.A.1993), the Court found that embarkation to participate in combat in Operation Desert Storm was important service. In addition, it has been held to include such duty as service as a cook on a Coast Guard icebreaker enroute to the Antarctic in support of Operation Deep Freeze, *Merrow*; as a rifleman enroute to ongoing hostilities in Vietnam, *United States v. Gaines*, 17 U.S.C.M.A. 481, 38 C.M.R. 279, 1968 WL 5394 (1968); and even basic training when it is an essential requirement for combat duty overseas, *United States v. Deller*, 3 U.S.C.M.A. 409, 12 C.M.R. 165, 1953 WL 2203 (1953). Important service can also include embarkation for foreign shores to a potentially hostile environment. *United States v. Willingham*, 2 U.S.C.M.A. 590, 10 C.M.R. 88, 1953 WL 1777 (1953); *United States v. Hemp*, 1 C.M.A. 280, 3 C.M.R. 14, 1952 WL 1821 (1952); MCM, Part IV, ¶ 9c(2)(a).

■ At the time the appellant quit his unit, American forces were not engaged in hostilities and the evidence of record is sketchy as to the nature of the unit's anticipated duties once they arrived in Saudi Arabia. Nevertheless, we find ample evidence that the appellant's unit was destined for important service. TOW Company, 8th Tank Battalion, 4th Marine Division is a combat unit of the Marine Corps reserve force. It was activated by the President pursuant to his authority in Title 10, United States Code, in response to the Iraqi invasion of Kuwait in August 1990. The members who manned it were ordered to leave their civilian pursuits and report to the Commanding General, II MEF, for duty within a matter of days. The activation was sudden, decisive, and extraordinary. The purpose was clearly to serve the national interest in the Middle East. There is simply no word for such service short of "important."

■ The appellant asserts, as well, that the evidence is insufficient to convict because there is no proof that the appellant's unit actually embarked. In light of the appellant's ultimate medical disqualification which would have prevented him from embarking with his unit in any event, we consider the ultimate fate of his unit to be irrelevant. However, the real question that arises from the appellant's medical disqualification is what effect that fact has on the Government's proof of the third element, i.e., that the service *to be performed by the accused* was "important." If to satisfy this element, the Government is required to prove that, but for his own misconduct, the appellant would have embarked for Saudi Arabia with his unit, then the evidence is insufficient to convict as a matter of law. However, if the requirement is only to show that, *at the time the absence commenced*, embarkation was reasonably anticipated, imminent, and known by the appellant to be such, then the evidence is sufficient to establish his guilt of the offense.

■ We believe that the latter view is the correct one in law. Desertion, like its lesser form, unauthorized absence, is an instantaneous offense. *United States v. Ray*, 7 U.S.C.M.A. 378, 22 C.M.R. 168, 1956 WL 4752 (1956). It is established the instant the accused quits his unit with the requisite intent and knowledge. *Thun*, 36 M.J. at 469. The harm done by an accused through the commission of this particular form of desertion—abandoning his unit and his nation when they are most in need of his service—is accomplished at the time he quits the unit. If an intervening event, such as a medical disqualification, occurs to preclude the actual performance of the important service, that fortuitous event does not right the wrong that has been done. We see the appellant's ultimate medical disqualification no differently than an intervening decision by the President to withdraw U.S. forces from Saudi Arabia before embarkation for political reasons.[6] That event, had it occurred, would

---

6. In this regard, we distinguish the Army Court's treatment of the accused's application for consci- entious objection in *United States v. Wiley*, 37 M.J. 885 (A.C.M.R.1993). The Court set aside

not have negated, retroactively, the criminality of the appellant's conduct. In both *United States v. Squirrell*, 2 C.M.A. 146, 7 C.M.R. 22, 1953 WL 1507 (1953) and *United States v. Gameroz*, 3 C.M.R. 273, 1952 WL 1918 (A.B.R.1952), the accused quit their units when informed that combat on the front lines was imminent. In each case, the accused surrendered voluntarily within a few days and before his unit had actually departed to engage the enemy. In both cases, the brief duration of the absences and the fact that the hazardous duty they were convicted of avoiding had not occurred were considered as relevant only with respect to the intent element. In neither case did the Court or the board set aside the finding of guilty based on the lack of *actual* hazardous duty during the accused's absence. Likewise, in *Thun,* the accused was absent for only a few hours and, although the published opinion does not reveal whether his unit actually deployed during that brief period, it is clear from the posture of the case that the Court considered the offense complete at the moment the accused quit his unit. 36 M.J. at 469.

## IV.

 In his third assignment of error, the appellant claims that the desertion specification is fatally defective because its allegation of an intent to avoid hazardous duty or to shirk important service violates the rule of law against disjunctive pleadings. *United States v. Woode*, 18 M.J. 640 (N.M.C.M.R. 1984), *petition denied,* 21 M.J. 84 (C.M.A. 1985). These two intents are not correlative, although they may exist at the same time and are chargeable under the same section of the Code. *Smith,* 39 C.M.R. at 49. We concur with both parties that disjunctive pleading in this case was error. However, we conclude that the error was waived by a failure to lodge a timely objection and, in any

event, the appellant has suffered no prejudice as a result. In *Woode,* the Court considered the pleading fatal because no reasonable reading of the specification could give any clue to the offense against which the accused was required to defend. *Id.* at 642. Here, the object of both alleged intents is the same: embarkation to Saudi Arabia. We find no indication in the record that the appellant's defense team was misled, confused as to which specific intent to defend against, or otherwise suffered harm by the disjunctive pleading. As indicated above, we have determined that the proof did not establish the element of hazardous duty and we will amend the specification to so reflect in our decretal paragraph.

With respect to assigned error IV, the appellant asserts that the military judge erred in taking judicial notice of the facts that 1) formal hostilities between Iraq and the United Nations (including U.S. forces) commenced on 17 January 1991; 2) military ground combat operations between Iraq and U.N. forces commenced on 23 February 1991; and 3) a unilateral cease fire was declared by the U.S. on 27 February 1991. App. Ex. VIII. His objection is that these facts are not relevant to any matter at issue, particularly to the appellant's intent, because they occurred after his absence terminated. At the time he admitted them, the military judge stated that the relevance of these facts had not yet been established. Record at 74. We are not convinced that he ever did consider them relevant. However, for purposes of this assigned error, we will assume that he did admit them into evidence.

 These particular facts are certainly the type of matter that is routinely subject to judicial notice. Mil.R.Evid. 201(b). However, we concur with the appellant that their relevance was never established. Yet, we are convinced that the appellant has suffered

---

Wiley's conviction for desertion on the grounds that he had submitted what amounted to the equivalent of a formal application *before* he quit his unit. The act of submitting the application placed him within a category of persons ineligible for orders to deploy to Southwest Asia by departmental regulation. Therefore, the order to do so in his case was illegal. Here, when he quit his unit, the appellant was eligible for embarka-

tion and remained eligible until the medical board found him to be not physically qualified—a decision clearly based upon medical policy and not physical inability. Consequently, the order to proceed to Camp Lejeune for predeployment training was lawful and, more to the point, *at the time he quit his unit,* the imminent and important service expected to be performed by the appellant was embarkation to Saudi Arabia.

no prejudice as a result of their admission into evidence, particularly in view of our finding that the element of "hazardous duty" was not proved. First, these particular facts, which prove the existence of combat operations in the Persian Gulf arena, are established by other evidence of record. Record at 62. Second, and more to the point, they truly have no effect on the remaining elements of desertion for which the other evidence of record is more than sufficient to prove. Moreover, we are confident that the military judge, sitting as the finder of fact, was able to place them in the proper perspective—one of negligible probative value and relative insignificance.

■■■ Finally, we find the evidence sufficient to establish the appellant's guilt of the offense of missing his unit's movement to Camp Lejeune through design, and we are, ourselves, convinced beyond reasonable doubt of his guilt of that offense. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *Turner*, 25 M.J. at 325.

Accordingly, the finding of guilty to the specification under Charge I is modified to except the language "avoid hazardous duty and/or." The findings of guilty to the remainder of that specification, to Charge I, and to the remaining charge and specification and the sentence, as approved and partially suspended below, are affirmed.

Senior Judges WELCH and ORR, concur.